675 P.2d 49

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Alvin Leroy PALIN,
Defendant-Appellant.**

**No. 14063.**

Court of Appeals of Idaho.

Dec. 28, 1983.

Petition for Review Denied
July 11, 1984.

Eric T. Nordlof, of Nordlof & Loats, Coeur d'Alene, for defendant-appellant.

David H. Leroy, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

Following a jury trial, Alvin Palin was convicted of two counts of rape and of both first and second degree kidnapping. On appeal he contends that the district court erred (1) by excluding evidence at trial of the rape victim's prior sexual conduct; (2) by refusing to declare a mistrial after the prosecutor asked Palin "how many times" he had been convicted of prior felonies; and (3) by denying a motion for a new trial made upon information received after trial.[1] For reasons stated below, we conclude that no reversible error occurred and that the judgment of conviction should be affirmed.

The record discloses that Palin, then twenty-eight years old, and a male companion met two girls, both fourteen years of age, at a game arcade in Post Falls. The four of them decided to drive in Palin's car to a nearby park. However, they did not stop at the park; they drove to some hills just outside the city. Palin later testified that all four persons agreed to continue driving to the hills, but the girls said they repeatedly asked him to turn the car around. Palin's male companion, who pled guilty to second degree kidnapping, did not testify at trial. Palin ultimately was convicted of raping one of the girls twice, at different locations where they stopped along the back roads. Palin admitted that he and the rape victim had intercourse on one occasion, but he claimed it was consensual. Palin also was convicted of the first degree kidnapping of that girl and the second degree kidnapping of her friend.

---

1. In his brief Palin also sought review of a sentence to concurrent, indeterminate fifteen-year terms for each crime. However, at the outset of oral argument, his counsel withdrew the sentencing issue, explaining that the sentence had been commuted to shorter terms by the Commission of Pardons and Parole. Accordingly, we will not review the sentence in this opinion. During oral argument, the Court also asked Palin's attorney whether he sought any review of the jury selection in this case. The Court noted that more than 800 pages of transcript relating to voir dire examination had been prepared at public expense and submitted as part of the appellate record. Because a transcript of voir dire examination is not part of the standard transcript, this expense presumably was incurred at the affirmative request of defense counsel. See I.A.R. 25(a)(1). However, counsel acknowledged that no issue germane to this portion of the transcript had been raised. We are not required to search a trial record for unspecified errors. *State v. Crawford,* 104 Idaho 840, 841, 663 P.2d 1142, 1143 (Ct.App.1983). *See also* I.A.R. 35; *State v. Smoot,* 99 Idaho 855, 590 P.2d 1001 (1978). Appellate records should be tailored to the issues. We encourage district judges, who must approve requests for transcripts at public expense, to inform counsel that such requests should be reasonably related to the issues which counsel intend to raise on appeal.

## I

Palin first contends that the district court erred by prohibiting inquiry at trial into the rape victim's past sexual conduct. The court invoked I.C. § 18–6105, the "rape shield" statute,[2] which provides that "[i]n prosecutions for the crime of rape, evidence of the prosecuting witness' previous sexual conduct shall not be admitted ... except as provided hereinafter...." The ensuing language permits a defendant wishing to present such evidence to request that the court conduct a hearing "out of the presence of the jury" concerning the relevancy of the evidence. Following such a hearing in this case, the judge ruled that inquiry to elicit such evidence would not be permitted.

Palin urges that the district court's reliance upon the "rape shield" statute was misplaced. He asserts that his purposes for inquiring into the rape victim's sexual history were related not only to the rape charges but also to the kidnapping charges. Palin sought to establish, by a showing of unchaste conduct, (a) that the rape victim had consented to accompany him into the hills and (b) that she was biased as a witness. Admittedly, the applicability of the "rape shield" statute to a prosecution other than for rape is unclear. The statute itself refers only to rape. In an appropriate case it might be necessary to determine the scope of evidentiary restrictions imposed by the statute, where a prosecution for rape is coupled with prosecution for a factually connected crime such as kidnapping. However, we need not make that determination here. Regardless of how the statute may apply, any inquiry to a witness must pass a threshold test of relevancy. We believe the judge's ruling on Palin's proposed inquiry can be upheld upon that threshold test.

## A

■ Palin's first stated purpose for inquiring into the rape victim's sexual history was to show her consent to his actions. This purpose would be relevant to a material issue in the case only if such consent would tend to exculpate Palin from criminal liability for the rapes or for the kidnapping of that victim.

It is self-evident that consent is immaterial to the rape charges. Palin was accused of violating I.C. § 18–6101 by having twice engaged in "the act of sexual intercourse with a female not his wife ... who was under the age of eighteen (18) years, and who did not consent to that sexual intercourse...." As noted, Palin denied one act but admitted the other, claiming that it had been consensual. However, the prosecution's charges and evidence would have been sufficient on both rape counts, even if lack of consent had not been established, to invoke the "statutory rape" provision of I.C. § 18–6101(1). With exceptions not applicable here, this subsection provides that a rape may consist simply of "sexual intercourse accomplished with a female ... under the age of eighteen (18) years." Consent is not a defense to this form of rape.

The question of consent is more complex when examined in the context of the first degree kidnapping charge. The pertinent statute, I.C. § 18–4501, provides that kidnapping is committed by a person who wilfully:

1. Seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of this state, or in any way held to service or kept or detained against his will; or,

2. Leads, takes, entices away or detains a child under the age of sixteen (16) years, with intent to keep or conceal it from its parent, guardian or other person having lawful care or control thereof, or with intent to steal any article upon the person of the child ....

2. Statutes like I.C. § 18–6105 are known as "rape shield" laws because they restrict inquiries into the rape victim's private life. *See generally* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 COLUM.L.REV. 1 (1977).

Subsection (1) defines a crime historically known as "simple kidnapping"—detaining the victim against his or her will, whether within this state or without, if the seizure occurred within the state. Subsection (2) defines a crime historically termed "child stealing," which requires that the victim be less than sixteen years old and that the kidnapper either intend to conceal the child from the parent or intend to rob from the child. These historical labels are imprecise but they demonstrate that the kidnapping of a child has been recognized as a crime separate from simple kidnapping. In reality it is a crime against the parents as well as against the child. It interferes with the parental right to custody and control of the child. *See* R. PERKINS, CRIMINAL LAW 181–82 (2d ed. 1969).

In this case the state argues that Palin was convicted of child kidnapping—that is, subsection (2) of I.C. § 18–4501. Upon that premise the state urges that consent of the child would be immaterial. We concede that the conclusion follows logically from the premise. The intent required by statute on the part of a child kidnapper is to "keep or conceal [the child] from its parent, guardian or other person having lawful care or control thereof." A child may consent yet the crime still be committed. *State v. Jackson*, 72 Wash.2d 50, 431 P.2d 615 (1967); *see* cases collected in 1 AM. JUR.2d *Abduction and Kidnapping* §§ 15, 16. Thus, if the state's focus upon subsection (2) were correct, Palin's purpose for inquiring into the rape victim's sexual history—to show that she had consented to driving into the hills—would be defeated.

However, we have difficulty accepting the state's premise that Palin was convicted of subsection (2). The prosecutor's amended information referred broadly to the kidnapping statute without specifying any subsection, and it charged that Palin had "wilfully, intentionally and unlawfully confined another person ... against [her] will" for the purpose of raping her. This language tracks the requirements of subsection (1). It does not recite the elements of subsection (2). Moreover, the district court later instructed the jury that Palin could be found guilty of kidnapping the rape victim only if he "in any way kept or detained [her] against ... her will." The jury was further instructed that if "the person alleged to have been kidnapped voluntarily consented to accompany [Palin] ... you must give [him] the benefit of that doubt and acquit him of the charge." We intimate no view as to the propriety of these instructions. The important point is that the jury, having been so instructed, could not be said to have convicted Palin under subsection (2). The case was presented and tried under subsection (1). Therefore, the issue of consent was material to the charge that Palin kidnapped the rape victim.

This observation leads us to the next level of inquiry—whether evidence about the rape victim's past sexual conduct would have been relevant to the issue of consent. This determination requires us to evaluate the strength of any inferential connection between such evidence and the existence of consent. At the hearing conducted upon Palin's proposed inquiry about the victim's sexual history, no offer of proof was made and no opportunity to make such an offer was requested. The hearing consisted only of argument by each attorney as to the propriety of the inquiry itself.

A party seeking to present evidence must identify that evidence sufficiently to enable the trial court to make an informed ruling. *E.g., Jones v. State*, 576 P.2d 997 (Alaska 1978). If a defendant charged with a crime to which consent is a defense wishes to show that prior sexual conduct is relevant, he must make a preliminary showing which indicates the relevancy. *State v. Herrera*, 97 N.M. 7, 582 P.2d 384 (1978). *Cf.* I.R.C.P. 43(c) (in civil trial, offer of proof should be of "evidence in full"). Upon the present record we are unable to determine the nature of the evidence sought to be admitted, other than defense counsel's suggestion that the rape victim may have been unchaste.

In our view, even if counsel's suggestion were true, a mere showing of un-

chastity, by itself, would not have been relevant to show consent. Mere unchastity does not support an inference of consent to being kept or detained within the meaning of the kidnapping statute. Our view might be different if Palin had offered to prove that the victim had engaged in past conduct manifesting a pattern of voluntary encounters with men under circumstances similar to this case. A jury legitimately might have inferred consent in this case from evidence that the rape victim previously had met strangers in public places and voluntarily had gone elsewhere with them for sexual purposes. But in the absence of such a particularized link between the victim's past conduct and her alleged actions in this case, we are constrained to hold that any inference of consent would not have been supported by the evidence sought. An inquiry merely to show unchastity would not have passed the test of relevancy.

## B

Palin's alternative purpose for the proposed inquiry was to show that the rape victim was a biased witness and thereby to impeach her credibility. Palin argues that the district court's refusal to allow him to present such evidence effectively denied him his constitutional right to confront an adverse witness, or that this right was significantly infringed.

The right to confront and to cross-examine witnesses is guaranteed by the sixth amendment to the United States Constitution. Although no comparable provision exists in the Idaho Constitution, the sixth amendment is applicable to criminal prosecutions in this state by virtue of the fourteenth amendment to the United States Constitution. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The effectiveness of cross-examination is enhanced by the ability to impeach the credibility of an adverse witness. In the instant case, after the hearing on the proposed inquiry, the district judge concluded that evidence of any prior sexual conduct by the victim could not be used to impeach the victim's general credibility.

■ A showing of bias is a permissible mode of impeachment. "The law recognizes the slanting effect upon human testimony of the emotions or feelings of the witness toward the [defendant].... Partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility." E. McCLEARY, McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE, 78 (2d ed. 1972). In this case, the credibility of the rape victim was critical to the state's case. Although her credibility was irrelevant to one count of rape—the act which Palin admitted but claimed to be consensual—it was relevant to the other count of rape which Palin denied, and to the kidnapping charges.

■ However, we have not been cited— and we have not found—authority that mere unchastity is a proper basis to impeach a witness' general credibility. We do not gainsay that past sexual conduct may, in some circumstances, be relevant to a question of credibility. For example in *United States v. Dorsey*, 16 M.J. 1 (C.M.A. 1983), the Court of Military Appeals held evidence of a rape victim's prior sexual conduct to be admissible. The evidence in that case supported a defense theory that the victim had fabricated the rape story in retaliation for the accused's calling her a "whore." Such evidence goes beyond a generalized showing of unchastity. It tends to show a particular motive for giving biased testimony. In contrast, the evidence of unchastity presumably sought to be elicited in this case would have contained no such showing. Palin made no offer to prove a connection between prior sexual conduct and a motive or propensity to fabricate. Without more, the victim's prior sexual conduct was not relevant to her general credibility as a witness. We conclude that the district judge properly refused to allow inquiry into the victim's sexual history.

## II

The next issue is whether the district court erred by refusing to declare a mistrial after the prosecutor asked Palin, during cross-examination, "how many times" he had been convicted of prior felonies. The question prompted an objection that was sustained and a mistrial motion that was denied.

These events followed proceedings outside the jury's presence, in which the trial judge ruled from the bench that the prosecutor could ask Palin simply whether he had ever been convicted of a felony. The correctness of that ruling is not now disputed. When the jury returned, the prosecutor asked the permitted question. However, when Palin gave an affirmative answer, the prosecutor asked the additional question concerning the number of times he had been convicted. Defense counsel's objection prevented Palin from answering. Thus, our focus in this case is not upon evidence improperly adduced but upon prosecutorial misconduct.

In *State v. Shepherd*, 94 Idaho 227, 229–30, 486 P.2d 82, 84–85 (1971), our Supreme Court held that "the prosecution is prohibited from interrogating ... concerning the number or nature of such previous felony or felonies." In that case the additional inquiry was answered and the jury was informed that the defendant's prior felony was for the same crime, lewd and lascivious conduct, charged in the case then being tried. The Supreme Court concluded that the defendant had been denied a fair trial, reversed the conviction and remanded the case. In light of *Shepherd*, it was clearly improper for the prosecutor in this case to make the additional inquiry. However, it does not necessarily follow that Palin was denied a fair trial. Each case must be examined upon its own facts to determine the impact of error. Here, unlike *Shepherd*, the jury was not informed of the nature or number of any prior felonies. The narrow issue before us is whether the prosecutor's unanswered inquiry compels reversal.

■ The issue is framed by defense counsel's motion for mistrial. In a recent pair of cases, we examined closely the standard for reviewing refusal to declare a mistrial when the motion has been made on the basis of prosecutorial misconduct. *See State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983); *State v. Stoddard*, 105 Idaho 169, 667 P.2d 272 (Ct.App.1983). In *Urquhart*, we said that although rulings on motions have been characterized as exercises of discretion, "the phrase 'abuse of discretion' inadequately describes the focus of appellate review when a mistrial has been denied in a criminal case.... The standard, more accurately stated, is one of reversible error." 105 Idaho at 95, 665 P.2d at 1105. Because the prosecutorial misconduct in that case directly implicated the constitutional right to remain silent, we applied the constitutional standard of reversible error—whether the jury would have reached the same result if the prosecutorial misconduct had not occurred. When a federal constitutional error is committed, the "appellate court must determine beyond a reasonable doubt that the error did not contribute to the verdict." *Id.* *See also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981).

■ In *Stoddard*, the error at trial did not directly implicate a specific constitutional right. The prosecuting attorney asked a question which arguably suggested to the jury that the defendant had committed other crimes. In *Stoddard* we outlined the traditional Idaho test of harmless error. We noted that Idaho's traditional test "has been stated in terms virtually as rigorous" as the constitutional standard enunciated in *Urquhart* and *Chapman*. *Stoddard*, 105 Idaho at 171, 667 P.2d at 274. The core inquiry under both tests is whether it appears from the record that the event triggering the mistrial motion contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the event not occurred.

In this case the event was the prosecutor's inquiry about "how many times" Palin had been convicted. The jury already knew, from the previous question and answer, that Palin was a convicted felon. Any diminished credibility resulting from such knowledge would have remained in the jurors' minds regardless of whether the next question had been asked. Therefore, our focus is confined to any additional prejudice caused by the second question. We believe that such additional prejudice was slight in relation to the evidence of guilt. The record discloses that the two girls gave reasonably consistent accounts of the crimes charged. Their testimony was corroborated by circumstantial and physical evidence. In contrast Palin's testimony, that his encounter with the rape victim was consensual, was shown to conflict with an earlier statement given the police in which he said he had not seen either of the girls during the evening in question. Upon this record, we conclude beyond a reasonable doubt that the jury would have reached the same result had the prosecutor not asked the improper question. Therefore, the district court did not commit reversible error by refusing to declare a mistrial.

### III

Finally, we turn to Palin's contention that the district court erred by denying his motion for a new trial based on information received after trial. The newly discovered information was contained in the affidavit of a male individual acquainted with the rape victim's sister. The affiant said the sister told him that the victim had told the sister she had not been forcibly raped by Palin. After receiving Palin's motion for a new trial, accompanied by the affidavit, the district court conducted a hearing. At the hearing, the victim's sister testified that she never had made such a statement to the affiant. The affiant did not appear to testify.

Post-trial motions for new trials in criminal cases historically have been authorized in Idaho by I.C. § 19–2406. The statute lists grounds for such motions, including the existence of "newly discovered evidence ... material to the defendant ... which he could not with reasonable diligence have discovered and produced at trial." Today the statute is supplemented by I.C.R. 34, which provides that a trial court "on motion of a defendant may grant a new trial to him if required in the interest of justice." This rule invokes the trial court's discretion and plainly is broad enough to embrace all of the statutory grounds contained in I.C. § 19–2406. In fact our Supreme Court has held that motions for new trial under the rule are no longer limited to the statutory grounds. *State v. Drapeau,* 97 Idaho 685, 691 n. 4, 551 P.2d 972, 978 n. 4 (1976).

However, this rule is not without its limitations. In *Drapeau* the Court examined identical language in former I.C.R. 33, noting that it had been adopted almost verbatim from Federal Rule of Criminal Procedure 33. The court quoted with approval the following commentary on the federal rule.

Although defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored by the courts and are viewed with great caution. No court wishes a defendant to remain in jail if he has discovered evidence showing that he is not guilty, but after a man has had his day in court, and has been fairly tried, there is a proper reluctance to give him a second trial.

Accordingly rather exacting standards have been developed by the courts for motions of this kind. A motion based on newly discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. 2 C. Wright, Federal Practice and Procedure: Criminal § 557, at .515 (1969). [*Drapeau,* 97 Idaho at 691, 551 P.2d at 978.]

A district court's order granting or denying a motion for a new trial will not be overturned on appeal unless the court's discretion has been abused. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982). When such a motion has been made upon newly discovered information, the inquiry on appeal should be whether the information satisfies the tests adopted in *Drapeau*. If it does not, the trial court may be deemed to have acted within the proper bounds of discretion by denying the motion.

In the present case it appears that the information contained in the affidavit fails the *Drapeau* tests in several respects. First, the information in the disputed affidavit is compounded hearsay. It is not admissible evidence. It could only be used, if at all, to impeach the rape victim insofar as her testimony indicated the use of force. Second, the affidavit mentions rape but does not tend to disprove rape. A lack of force would be material only if consent were a defense to the rape charges in this case. As noted above, these charges included intercourse with a minor, to which consent is not a defense. Consequently, the affidavit presented information that was merely impeaching and not material. Moreover, it is unlikely that the information provided by affidavit could have produced an acquittal. The sister, who was the crucial link in the chain of hearsay, flatly denied making the statement attributed to her. We conclude that the district judge did not abuse his discretion by denying the motion for new trial.

The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.