736 P.2d 1314

STATE of Idaho, Plaintiff-Respondent,

v.

Leonard J. MAREK,
Defendant-Appellant.

No. 16178.

Supreme Court of Idaho.

April 17, 1987.

862

Roger Lee Sims, Fitzgerald, Sims & Fisher, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

Wilfrid W. Longeteig, Craigmont, for amicus curiae (Nez Perce Tribe).

SHEPARD, Chief Justice.

This is an appeal by defendant-appellant Marek who was charged with the crime of Aggravated Battery, I.C. §§ 18–903(c) and 18–907(a), and Felony Injury to Children, I.C. § 18–1501(1). Following trial a jury returned verdicts of guilty on both charges. Thereafter the district court entered a judgment of conviction on the charge of Aggravated Battery and sentenced the defendant to a determinate 15–year term. The record does not reflect whether the district court entered a judgment of conviction for Felony Injury to Children. Marek asserts, and the State concedes, that the trial court erred in entering its judgment of conviction on the charge of Aggravated Assault since the offense took place in Indian Country, the defendant and the victim were both Indians, and the offense of Aggravated Battery is one enumerated under the Major Crimes Act (18 U.S.C. § 1153), and hence jurisdiction to try the defendant for the crime of Aggravated Battery lies exclusively with the federal courts. We agree in part, reverse the conviction for the offense of Aggravated Battery, and remand the cause for further proceedings.

Defendant-appellant Leonard J. Marek, a member of the Nez Perce Tribe, and his wife Leilani Marek, a member of the Thlingit Tribe, lived in a trailer house on the Nez Perce Indian Reservation with their three children, Phillip, age three, and Ellen and Elsie, infant twins age two months. On November 4, 1985, during the course of an argument between defendant and his wife, the defendant picked up the infant Elsie and began striking her. Thereafter he held the infant by her neck and began shaking her, after which time the infant went limp. After the defendant administered artificial respiration the child began to breathe, and began to "twitch." The infant did not improve during the following days, and on November 6, 1985, Leilani Marek took the two other children to the Indian health center and told her sister-in-law, Martha Marek, who worked at the clinic, that the infant Elsie had been injured by the defendant. The defendant's brother, Larry Marek, after a heated discussion with the defendant, took Elsie to the clinic where she was examined by a physician, and then immediately transported to the emergency room at St. Joseph's Hospital in Lewiston.

Upon medical examination, a number of bruises were found on the child, including two bruises on the labia, one over the right eye, and several bruises on her jaws and left ear. Those bruises were determined to be two to four days old. The infant Elsie continued to have seizures. Further examination and laboratory testing determined that the infant's head injuries had caused bruising in the brain tissue, and bleeding into the fluid around the brain. The physician concluded that there had been a permanent loss of mental faculty, impairment of vision in one eye, the existence of many motor function problems, and lack of strength in her legs and neck. The head size of the infant Elsie has not continued at a normal growth.

On November 7, 1985, defendant took his son Phillip and left the Nez Perce Reserva-

tion, but stopped to visit a friend in Lewiston who testified that the defendant had told her that he had hit the infant Elsie and that she was hurt. Defendant denied making that statement.

A complaint was filed against Marek charging him with Aggravated Battery, I.C. §§ 18–903(c) and 18–907(a), and Felony Injury to Children, I.C. § 18–1501(1). Defendant moved to dismiss the complaint for lack of State jurisdiction, which motion was denied. Thereafter defendant moved to dismiss one count, or in the alternative, that the State be required to elect to proceed on one of the charges, but not both, and it was further contended that I.C. § 18–1501(1) was unconstitutionally vague. Those motions were denied.

Following the preliminary hearing the defendant was bound over for trial, and on the first day of trial the State filed an amended information which amended both charges by inserting the phrase "shaking and" immediately prior to the word "striking." That motion to amend was granted, and although defendant made a motion for continuance, the record does not indicate that the motion for continuance was pursued, nor did the court make any ruling thereon.

The principal issue is whether, as asserted by Marek, the court lacked jurisdiction to try Marek on the offenses charged under the provisions of the Major Crimes Act, 18 U.S.C. § 1153, which Marek asserts vests jurisdiction solely in the federal courts.

■ The Major Crimes Act was enacted as a Congressional response to the United States Supreme Court decision in *Ex Parte Crow Dog*, 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed.2d 1030 (1883), which had held that neither the federal nor the territorial courts had jurisdiction to try an Indian for the murder of another Indian on a reservation. Under the provisions of the Major Crimes Act, federal courts have exclusive jurisdiction if (1) the offense occurred in "Indian country," (18 U.S.C. § 1151); (2) the defendant and the victim are both Indians, (18 U.S.C. § 1153); (3) the criminal act

is an enumerated offense under the Major Crimes Act, (18 U.S.C. § 1153).

"Indian country" is defined in 18 U.S.C. § 1151:

> Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country," as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

Since the acts in question here occurred within the exterior boundaries of the Nez Perce Reservation, the literal language of 18 U.S.C. § 1151 would appear to include the issue of the acts occurring in "Indian country." The State raises no issue, and the record does not indicate that although the acts in question took place within the limits of the reservation, that they nevertheless occurred on lands, the title to which is held by non-Indians. *See* Clinton, "Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze," 18 Ariz.L.Rev. 503 (1976). *See also Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).

The State does not assert that either the defendant or the victim were not Indians. The Indian Reorganization Act of 1934 (25 U.S.C. § 479), states:

> The term "Indian" as used in (citations) of this title shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood.

For the purposes of this Act, eskimos and other aboriginal peoples of Alaska shall be considered Indians.

It is stated in Cohen's *Handbook of Federal Indian Law* (1982 ed.):

The term "Indian" may be used in an ethnological or in a legal sense. If a person is three-fourths Caucasian and one-fourth Indian, that person would ordinarily not be considered an Indian for ethnological purposes. Yet legally such a person may be an Indian. Racial composition is not always dispositive in determining who are Indians for the purposes of Indian law. In dealing with Indians, the federal government is dealing with members or descendants of political entities, that is, Indian tribes, not with persons of a particular race. Tribal membership as determined by the Indian tribe or community itself is often an essential element. In fact, a person of complete Indian ancestry who has never had relations with any Indian tribe may be considered a non-Indian for some legal purposes.

Recognizing the diversity included in the definition of Indian, there is nevertheless some practical value for legal purposes in a definition of Indian as a person meeting two qualifications: (a) that some of the individual's ancestors lived in what is now the United States before its discovery by Europeans, and (b) that the individual is recognized as an Indian by his or her tribe or community.

Congress has often deferred to tribal determinations of membership. On the other hand, in some instances Congress has departed from this standard by imposing additional requirements such as particular blood quantums, or by dispensing with the requirement of tribal membership or relations. It is therefore necessary to determine the specific purpose for which Indian identity is relevant. A conclusion may then be reached in the context of the statute or other provision in question.

*See also Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).

■ Herein the record indicates that the victim is the biological offspring of two enrolled members of Indian tribes, and is herself an enrolled member of the Thlingit Tribe. The defendant is an enrolled member of the Nez Perce Tribe. Hence, it is clear that both defendant and victim are "Indians" not only in the eyes of their tribes, but also in the legal sense of the word.

■ Marek contends that the offenses charged here lie within the exclusive jurisdiction of the United States under the provisions of the Major Crimes Act, 18 U.S.C. § 1153, which provides:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, *assault resulting in serious bodily injury,* arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of burglary and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

In addition to the offenses of burglary and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense. (emphasis added.)

It is conceded by the State that the offense charged here of Aggravated Battery (I.C. § 18-907), is substantially similar to and encompasses the crime of assault re-

sulting in serious bodily injuries as delineated in 18 U.S.C. § 1153. *See Langley v. Ryder,* 602 F.Supp. 335 (W.D.La.1985); *United States v. Goings,* 527 F.2d 183 (8th Cir.1975). As to the exclusiveness of federal jurisdiction over the enumerated offenses, *see Solem v. Bartlett,* 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984); *United States v. John,* 437 U.S. 634, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978); *Seymour v. Superintendent,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962); *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *United States v. Kagama,* 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). The case law makes clear that the Major Crimes Act is preemptive of state jurisdiction with respect to the enumerated crimes. The defendant is thus subject to federal prosecution for the crime of Aggravated Battery.

Marek next asserts that while the offense of Felony Injury to Children, as defined in I.C. § 18–1501(1), is not an enumerated offense within the provisions of the Major Crimes Act, nevertheless the State charges of Aggravated Battery, I.C. §§ 18–903 and 18–907, and Felony Injury to Children, I.C. § 18–1501(1), are identical offenses under the facts of this case, and since Aggravated Battery is an enumerated offense under the Major Crimes Act, so also must be Felony Injury to Children.

I.C. § 18–1501(1) defines the offense of Felony Injury to Children as:

> (1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

Clearly, the statute requires proof that the victim was a child, and that the accused willfully inflicted upon the child unjustifiable physical pain or mental suffering. Neither Aggravated Battery nor Felony Injury to Children is a lesser included offense of the other. *State v. McCormick,* 100 Idaho 111, 594 P.2d 149 (1979); *State v. Hall,* 86 Idaho 63, 383 P.2d 602 (1963). Each offense requires proof of separate essential elements not necessarily required of the other. Likewise, elements of the crime of Felony Injury to Children exceed those required for the proof of the federal offense of Assault Resulting in Serious Bodily Injury.

Marek next asserts that he would be subjected to double jeopardy in that allowing him to be convicted of Felony Injury to Children in state court, and the offense of Assault Resulting in Serious Bodily Injury in federal court, permits him to be twice convicted for offenses arising out of the same acts. U.S. CONST. amend. V. It is sufficient to state that the record here contains no indication of federal prosecution of Marek, nor any indication that such is likely to occur in the future. Nevertheless, the double jeopardy clause of the fifth amendment does not prohibit separate sovereigns from pursuing separate prosecutions since separate sovereigns do not prosecute for the "same offense." *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

It is likewise clear that the strictures of I.C. § 18–301 are not implicated in the instant case. Even assuming that the crimes of Aggravated Battery and Felony Injury to Children constituted the same "acts," under our holding today Marek will not be punished in different ways by different provisions, but rather the conviction is reversed and the sentence vacated for the offense of Aggravated Battery. We further note that the provisions of I.C. § 18–301 cannot constitute a bar to a federal prosecution since it has no binding effect upon the United States.

Marek next argues that the State can only assert jurisdiction in the instant case pursuant to I.C. § 67–5101, which was

enacted by our state legislature in response to the congressional act, Public Law 280, 676 Stat. 588 (1953), which authorized the states to assume jurisdiction "with respect to criminal offenses ... at such time and in such manner as the people of the state shall, by affirmative legislative action, obligate and bind the state to assumption thereof."

I.C. § 67–5101 provides:

The state of Idaho, in accordance with the provisions of 67 Statutes at Large, page 589 (Public Law 280) hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:

A. Compulsory school attendance
B. Juvenile delinquency and youth rehabilitation
C. Dependent, neglected and abused children
D. Insanities and mental illness
E. Public assistance
F. Domestic relations
G. Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.

Marek further asserts the invalidity of the enactment of I.C. § 67–5101, because he argues that prior to such enactment there had been no amendment of art. 21 § 19 of the Idaho Constitution. It is correct that our Constitution, as adopted in pertinent part, provides, "said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States; ..." Nevertheless, it is clear that under the literal language of P.L. 280, a portion of the "absolute jurisdiction and control of the congress of the United States" was ceded with respect to certain criminal offenses to the states, as the states might assume "by affirmative legislative action." Hence, we hold that while our Constitution may have provided for

congressional control and jurisdiction over Indian lands, it did not, and could not, prohibit the ceding of part or all of such control and jurisdiction back to the states. Such ceding of partial jurisdiction and control was accomplished by the Congress if the state would consent to accept such jurisdiction and control by legislative enactment. Idaho did so accept that ceding by the Congress through legislative action. *See also State ex. rel. McDonald v. District Court of the Fourth Judicial District,* 159 Mont. 56, 496 P.2d 78 (1972); *State v. Paul,* 53 Wash.2d 789, 337 P.2d 33 (1959).

■ Marek next asserts that the language of I.C. § 67–5101 C, "logically refers only to the Child Protective Act" and does not include any authority to exercise jurisdiction as to criminal proceedings. We disagree. The very language of P.L. 280 authorized the states to assume jurisdiction with respect to criminal offenses, and the very language of I.C. § 67–5101 provides that the state of Idaho assumed and accepted jurisdiction for "criminal enforcement of state laws."

■ Marek next asserts that I.C. § 18–1501(1), Felony Injury to Children, is unconstitutionally vague in that the statute contains no definition of "unjustifiable physical pain," and hence persons are not informed as to what conduct on their part will subject them to criminal penalties. This Court has held that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law. *State v. Carringer,* 95 Idaho 929, 523 P.2d 532 (1974). The Court stated in *State v. Lenz,* 103 Idaho 632, 651 P.2d 566 (1982): "It is settled that this 'fair warning' requirement prohibits the various states from holding an individual criminally responsible for conduct which he could not reasonably understand to be proscribed." In determining the sufficiency of a statute, this Court has held that the words of a questioned statute are to be evaluated in reference to

the particular conduct of the defendant. *State v. Carringer, supra.*

We deem the statute in question as giving ample notice that conduct which causes or permits a child to suffer unjustifiable physical pain or mental suffering, or wilfully causes the health of a child to be injured, is ample warning and notice of proscribed conduct. The defendant's assertion that he did not know, or was not warned, that his actions in striking a two-month old infant with such force as to render her essentially a vegetable, was proscribed and forbidden, is nothing short of ludicrous.

Marek next asserts that the trial court erred in failing to order a mistrial because of the presence in the courtroom of the victim and her twin sister. The record only indicates that the presence of the twins was noted immediately prior to the testimony of their mother, Lelani Marek, that Marek objected to their presence, and the court ordered them removed.

It has been stated:

> On appeal the standard for reviewing the denial of a motion for mistrial is reversible error. This is, the appellant must not only show that error occurred, but also that the error was reversible rather than harmless. An error may be deemed harmless unless it appears from the whole record that the error "contributed to the verdict leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the [error] not occurred." *State v. Palmer,* 110 Idaho 142, 715 P.2d 355 (Ct.App.1985); *State v. Palin,* 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983).

Even assuming that the presence of the twins in the courtroom constituted error, there is a complete lack of showing that any prejudice resulted therefrom, and therefore we hold that the error, if any, did not constitute reversible error.

Marek next asserts that the trial court improperly restricted the cross-examination of his wife when the defense attempted to impeach her by a showing that she had previously made false reports of child abuse by the defendant. The defense indicated to the trial court that it intended to offer the testimony of persons who allegedly had investigated previous reports of child abuse, and would indicate that they found no bruising on the children. The court ruled that the attempted cross-examination of the defendant's wife went beyond the scope of direct examination, and that there had not been sufficient foundation laid at that time. There is no showing in the record that during the presentation of defense evidence, Marek was in any way restricted or prohibited from introducing such evidence on direct examination. The control of cross-examination of a witness is committed to the sound discretion of the trial judge, and absent a showing of prejudice, a limitation of cross-examination imposed by a trial judge will not be overturned on appeal. *State v. Pierce,* 107 Idaho 96, 685 P.2d 837 (Ct.App.1984). There is no showing of any resultant prejudice to Marek by the limitation of the cross-examination of his wife.

Marek finally asserts that the trial court erred in failing to impose sanctions upon the prosecution, or to strike certain of the testimony of Marek's brother, Larry Marek. At the preliminary hearing the defendant-appellant's brother, Larry Marek, testified that when he, Larry, went to the defendant's home on November 4, 1984, that he did not speak to the defendant. At trial, however, the brother, Larry Marek, testified that the defendant did speak to him at that time, and indicated that he, the defendant, had had an argument with his wife during the course of which he had struck the victim. Marek argues that the State was aware of that change in Larry Marek's testimony, and that the prosecution had failed to disclose such change in testimony, in violation of the requirements of I.C.R. 16. The State does not controvert the assertion that the prosecution was aware of the change in testimony, but rather asserted to the trial court, and asserts here, that the prosecution disclosed to the defense a statement that Larry Marek had made shortly after the injuries to the infant Elsie, and that such statement was consist-

ent with the testimony of Larry Marek at trial.

We note that during the testimony of Larry Marek at trial regarding the statements of the defendant allegedly made on November 10, 1984, no objection was made thereto. It was only approximately two days later when the defense pointed out Larry Marek's change in testimony from his statements at the preliminary hearing, asserted that the prosecution had, in violation of I.C.R. 16, failed to disclose such change in testimony, and moved for imposition of the sanction of dismissal. That motion was denied. During his testimony, Larry Marek had readily admitted that he was a "confessed liar." The jury was clearly informed of Larry Marek's prior inconsistent testimony at the preliminary hearing. The defendant does not assert that he was denied a fair trial by the prosecution's failure to disclose, nor does he point out in specifics what action could or would have been taken by the defense based on the knowledge that Larry Marek would testify differently than he did at the preliminary hearing. Rather, there is only the general assertion that the defense could have been better prepared.

I.C.R. 16 provides there shall be automatic disclosure by the prosecution of information which tends to negate the guilt of the accused. The evidence in question here does not tend to negate the guilt of the accused, but rather is inculpatory. I.C.R. 16(b) relates to the disclosure by the prosecution upon written request of the defense. The defense request for discovery as pertinent here only demands "any relevant written or recorded statements made by the defendant or copies thereof; and, the substance of any relevant oral statements made by the defendant to any peace officer, prosecuting attorney or his agent." The evidence at issue here does not fall within the strictures of that demand. Also demanded was,

a written list of the names and addresses of all persons having knowledge of the relevant facts of this case together with any record of prior felony convictions; and any statement made by such witness to the prosecuting attorney or his agents

or to any official involved in the investigatory process of the case.

The evidence at issue here could arguably fall within the language of such demand for disclosure.

Even assuming that the evidence at issue here fell within the disclosure requirements, we find no reversible error in the trial court's refusal to impose sanctions for the failure to disclose. I.C.R. 16(e) authorizes the court to impose sanctions for failure to disclose, absent a showing of good cause or excusable neglect. As stated in *State v. Buss*, 98 Idaho 173, 560 P.2d 495 (1977):

What sanction should be imposed or whether a sanction should be imposed at all is discretionary with the trial court. And the trial court's exercise of that discretion is beyond the purview of a reviewing court unless it has been clearly abused.

We find no abuse of discretion by the trial court. Information had been disclosed to the defense that Larry Marek had made statements inconsistent with his preliminary hearing testimony. No objection was made at the time of his testimony at trial, but rather the defense was able to point out how Larry Marek had changed his testimony from that at the preliminary hearing, that he was a "confessed liar," and that he was testifying at trial in exchange for an immunity from prosecution on the charge of perjury. Assuming that the defense had obtained a disclosure of the change in testimony at trial, it is unable to indicate what, if anything different, it would have done in the conduct of the trial. Hence, even if erroneous, there is no showing that the failure to disclose was prejudicial.

We have considered Marek's remaining assertions of error and find them to be either without merit or rendered moot by our decision.

The conviction on the charge of Aggravated Battery is reversed and the sentence imposed thereon is vacated. The jury verdict of guilty on the charge of Felony Injury to Children is reinstated and the cause is

remanded with directions that judgment of conviction on the charge of Felony Injury to Children be entered and, following appropriate proceedings, sentence be imposed thereon.

DONALDSON, BAKES, BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

Having joined the majority opinion, I write only to observe that this case, of necessity, must be applied narrowly to the precise facts before the Court today— abuse of an Indian child by its Indian *parent or legal custodian.* My area of concern is that energetic and resourceful county prosecutors around the state might misinterpret our opinion to mean that the state may properly file a criminal action in state court against *any* Indian under I.C. § 18–1501 for felony injury to *any* child. For the reasons stated below, I believe that such an assertion of state court jurisdiction would be improper, and any judgment of conviction issuing therefrom would be void.

As the majority opinion observes at page 1319, our legislature responded to Public Law 280 by enacting I.C. § 67–5101 in 1963. By this statute, the state assumed jurisdiction, civil and criminal, within Indian country with regard to dependent, neglected and abused children. A significant problem arises, however, from the fact that the statute under which Marek was convicted, I.C. § 18–1501, was passed in 1977.

A companion provision of I.C. § 67–5101 provides that assertions of state court jurisdiction subsequent to 1963 require tribal consent:

> **67–5102. Additional state jurisdiction with consent of tribe governing body.**—Additional state jurisdiction in criminal and civil causes of action may be extended to particular reservations or Indian country with the consent of the governing body of the tribe occupying the Indian country effected [affected] by the assumption of such additional jurisdiction. This may be achieved by negotiation with the tribe or by unilateral action by the tribe. In every case the extent of such additional jurisdiction shall be deter-

mined by a resolution of the tribal governing body and become effective upon the tribe's transmittal of the resolution to the attorney general of the state of Idaho. Such resolution may effectively accept jurisdiction as to any particular field of criminal or civil jurisdiction. All state jurisdiction extended by virtue of this act shall be concurrent (and not exclusive) with jurisdiction in the same matters existing in the tribes or the federal government.

Moreover, since 1968, further assertions of state court jurisdiction must comply with the Indian Civil Rights Act amendment to Public Law 280, 25 U.S.C. § 1326 which requires Indian consent via a special election. *Cf.* F. Cohen, Handbook of Federal Indian Law, pp. 362–63 (1982 ed.). Because "tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the states," *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980), *quoted in California v. Cabazon Band of Mission Indians,* —— U.S. ——, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987), a blanket application of I.C. § 18–1501 is proper *only if* the tribe has consented pursuant to 25 U.S.C. § 1326.

The root of the problem discussed here is the very broad wording of our Felony Injury to Children statute which refers to *any* person inflicting harm upon, or endangering, *any* child. In contrast, the language of I.C. 67–5101 refers only to "[d]ependent, neglected and abused children." While the statute contains no definitional section, it is revealing that Idaho Code Title 16, Chapter 20, "Termination of Parent and Child Relationship," *also passed in 1963,* defines "neglected" and "abuse" as follows:

> d. "Neglected" used with respect to a child refers to those situations in which the child lacks proper support or *parental care* necessary for his health, morals, and well-being.

> e. "Abuse" used with respect to a child refers to those situations in which physical cruelty in excess of that required for reasonable disciplinary pur-

poses has been inflicted *by a parent or other person in whom legal custody* of the child has been vested. I.C. § 16–2002(d) and (e) (emphasis added).

Thus, it is exceedingly likely that the pertinent provision of I.C. § 67–5101 was intended by our legislature to apply *only* to abuse of an Indian child by its Indian *parent* or *legal custodian.*

Between 1963 and 1977, there appears to have been only *one* Nez Perce Tribal Resolution, passed on April 13, 1965, consenting to additional state jurisdiction:

> NOW, THEREFORE, BE IT RESOLVED, by the Nez Perce Tribal Executive Committee, the governing body of the Nez Perce Indian Reservation, in the aforesaid counties of the State of Idaho, at a duly constituted meeting of said Committee, that consent is given to the assumption by the State of Idaho of concurrent criminal jurisdiction within the Nez Perce Indian Reservation over the following offenses:
>
> Drunkness, Disturbing the peace, Contributing to the delinquency of minors, Procuring intoxicants for minors, Simple assault, Battery, Kidnapping, Embezzlement, Fraud, Forgery, Receiving stolen property, Extortion, Indecency and obscenity, Vagrancy, Trespassing and malicious injuries to property, Public nuisance and abatement thereof, Cruelty to animals, and carrying concealed and dangerous weapons in public places (the carrying of firearms in pursuit of treaty hunting rights expressly excluded).
>
> Tribal Resolution 65–126, *quoted in State v. Major,* 111 Idaho 410, 418, 725 P.2d 115, 123 (1986).

No area of criminal jurisdiction listed in this Tribal Resolution encompasses the type of behavior specified by Idaho's felony injury to children statute.

Moreover, in this case, the state has made no showing, and there is nothing in the record to establish, that the Nez Perce tribe has conducted the special election procedures mandated by 25 U.S.C. § 1326. Indeed, as of the publication of the 1982 edition of Felix Cohen's *Handbook,* no

tribe in the United States has consented to additional state jurisdiction pursuant to 25 U.S.C. § 1326. *Cf.* Cohen, *supra,* p. 363, note 127.

It is critical to note that the state bears the burden of establishing its jurisdiction over an Indian in Indian country. *State v. Major,* 111 Idaho 410, 418, 725 P.2d 115, 123 (1986); *State v. Allan,* 100 Idaho 918, 920, 607 P.2d 426, 428 (1980); *see also, Sheppard v. Sheppard,* 104 Idaho 1, 15, 655 P.2d 895, 909 (1982). Because of the definitions of "abuse" and "neglected" contained in I.C. § 16–2002(d) and (e) quoted above, and for the foregoing reasons, it is unlikely that the state can sustain its burden of proving that the very broad wording of our felony injury to children statute establishes state court jurisdiction over any Indian defendants in Indian country *other than parents or legal guardians* of alleged victims.