806 P.2d 963

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Alan Michael OLSON,
Defendant–Appellant.**

**No. 17958.**

Court of Appeals of Idaho.

March 1, 1991.

William J. Fitzgerald, Fitzgerald and Sims, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SILAK, Judge.

Following a court trial, Alan Olson was convicted of aggravated assault, I.C. §§ 18–901, 18–905(a) and 18–906. He filed a motion for a new trial on the basis that his conviction was not supported by the evidence. The court denied the motion and imposed a unified sentence of five years with a two-and-a-half year minimum period of confinement. On appeal, we are asked to determine whether the court abused its discretion in denying Olson's motion for a new trial, in imposing the sentence, and in relinquishing jurisdiction over the defendant. We hold that the evidence, though largely circumstantial, is sufficient to sustain the court's determination of guilt. We also hold that the district court did not abuse its discretion in sentencing and in relinquishing jurisdiction.

The incident which gave rise to the charge of aggravated assault occurred on October 6, 1988. Three men, Kenneth Reynolds, Ernest Bunch, and Norman Schroder, were on Big Sand Road, a rural mountain road in Latah County, attempting to repair Reynolds' pick-up truck, which had been left on the road the previous day. Reynolds was married to Olson's ex-wife, Pamela. Bunch was Pamela's father and Reynolds' father-in-law. Schroder was not related to the Reynolds, Bunch, or Olson.

The place where Reynolds' vehicle was parked was marked as Point A on Exhibit 3, a hand-drawn diagram offered into evidence by the state. Testimony at trial showed that just past Point A, the road curves and it is impossible to see around the bend in the road. The curve in the road was marked as Point B and from Point B, it is possible to see up the road to Point D where the road curves again. The distance from Point B to Point D is approximately seven hundred feet according to the officer who investigated the scene of the incident.

The Reynolds group got to the truck at about 9:00 a.m. A small pick-up truck passed them at about 9:15. At approximately 9:30, they saw Olson pass them in his blue International Scout. Within a few moments after Olson passed them, they heard a vehicle come to a stop. They then heard seven to ten shots from a small caliber firearm, which sounded like a semi-automatic weapon, and one shot from a larger caliber weapon. They heard the bullets pass over their heads and strike brush or trees behind them on a hillside.

After the shots stopped, the men heard a vehicle start to move. Reynolds and Schroder ran approximately forty feet up the road to Point B, which is just past the curve. From that vantage point, they saw Olson's vehicle quickly accelerating out of a wide spot in the road where a small logging road meets the Big Sand Road. This spot was marked on Exhibit 3 as Point C. The distance from Point A to Point C is approximately 225 yards.

Reynolds and Schroder walked through the woods to Point C and noticed that there were fresh tire marks in the road where tires had dug through the dry dirt to the moist earth below. Fearing that Olson would return, they hid in the woods until a sheriff's officer arrived about an hour to an hour-and-a-half later. Reynolds testified that he was scared and that Schroder was visibly shaken.

During this time, Bunch had driven his truck a few miles down the road to a place where a forest service crew was doing

some work. The crew radioed for help. Bunch began experiencing chest pains, and later that afternoon went to a hospital because he was having a heart attack.

Olson has admitted that he drove up Big Sand Road that day, and that he fired his gun. He contends, however, that he did not fire at the Reynolds group, but that he drove further up the road to a spot marked Point E, from which he did some target shooting into a hill at a ninety-degree angle away from the three men. Point E is around a curve and out of the line of visibility from either Point A or Point B. If Olson did fire his gun from Point E, it would have been virtually impossible for the bullets to reach Point A where the Reynolds group was located.

There was physical evidence to corroborate Olson's story. The only bullet casings that were found were discovered sixteen days later at Point E, and they were from a small-caliber weapon. The parties to the case stipulated that the casings were from Olson's semi-automatic gun. There was no evidence that a spent casing from a larger caliber weapon was found.

## I.

■ We turn first to the question whether there is sufficient evidence to sustain Olson's conviction. Olson contends that the discovery of bullet casings at a location consistent with his version of the facts and inconsistent with the state's version of the facts weighs heavily in his favor. He argues that this evidence requires his acquittal or at least a new trial.

Olson filed his motion for a new trial pursuant to I.C. § 19–2406. Subsection 6 of this statute allows the court, in its discretion, to grant a new trial when "the verdict is contrary to law or evidence." Ordinarily, this subsection applies to circumstances in which the defendant asks the court to overrule the verdict of the jury. In this case, the appellant's motion under this statute basically asks the court to reconsider its initial finding of guilt. This procedure has not been challenged on appeal; however, by deciding the substantive question, we do not conclude that the motion was procedurally correct.

Under I.C.R. 34, the trial court may grant a new trial if required in the interest of justice. A motion for a new trial may be made under this rule even where the trial was by the court without a jury. This court has previously held that Rule 34 invokes the trial court's discretion and plainly is broad enough to embrace all of the statutory grounds for new trial contained in I.C. § 19–2406. *State v. Palin*, 106 Idaho 70, 76, 675 P.2d 49, 55 (Ct.App.1983). In interpreting I.C.R. 34, our Supreme Court has held that the question whether the interests of justice require a new trial under the circumstances of a particular case is directed to the sound discretion of the trial court, and the trial court's decision will not be disturbed absent an abuse of that discretion. *State v. Scroggins*, 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1985) *cert. denied* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *State v. Olin*, 103 Idaho 391, 399, 648 P.2d 203, 211 (1982).

Olson's motion for a new trial was based on the assertion that the finding of guilt was not supported by substantial evidence. When the sufficiency of the evidence is challenged in a jury verdict context, we will not set aside the judgment of conviction if there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (1980); *State v. Boag*, 118 Idaho 944, 947, 801 P.2d 1295, 1298 (Ct.App.1990). On appeal, the evidence is viewed in the light most favorable to the prosecution. *Boag* at 947, 801 P.2d at 1298; *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). Although this was a finding of guilt by the court, the same standard of review applies. *State v. Hickman*, 119 Idaho 366, 806 P.2d 959 (1991).

The crime of assault is defined by I.C. § 18–901. Subsection (b), which is the one relevant to this case, states that assault is "[a]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do

so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." If the assailant uses a deadly weapon without intent to kill, then the crime becomes an aggravated assault. I.C. § 18–905(a). In announcing its finding of guilt, the trial court carefully reviewed the elements of the offense and stated the evidentiary basis for concluding that each element had been proved beyond a reasonable doubt.

In the present case there is no question that Olson was using a deadly weapon. Assuming that he was the person firing the shots, there is also no question that he had the ability to do violence to Reynolds and his companions. Likewise, there is no question that the Reynolds group had a well-founded fear that violence was imminent. As to the question of intent, the trial court was able to infer intent from the testimony of Reynolds, his wife, and Bunch regarding Olson's past behavior and threats, which seemed to stem from Pamela's having divorced Olson and married Reynolds. Olson has not challenged these findings. The central issue on this appeal is whether Olson actually fired the shots.

In support of Olson's position is the fact that another vehicle entered the area at approximately 9:15 that morning, just fifteen minutes before Olson passed the Reynolds group. Also in support is the fact that no bullet casings were found at Point C, the spot from which Olson allegedly fired the shots, but that casings were found at Point E where Olson claims he was doing his target practice. If no other facts were presented than these, there would be reasonable doubt as to whether Olson was actually the person who fired the shots. However, the trial court found the testimony of the victims to be more credible and thus to be given great weight. Reynolds, Bunch and Schroder testified that they saw Olson pass them in his vehicle. Reynolds and Bunch both testified that they heard the car drive on a short way and then stop with the motor running. It was immediately after the vehicle stopped that they heard the shots fired. After the shots stopped, Reynolds and Schroder ran up the road to a point where they could see Olson's vehicle driving away. When they walked up to Point C, they saw fresh marks in the road where dirt had been dug up as a vehicle accelerated quickly.

In rendering its opinion, the trial court specifically stated that it found the testimony of Reynolds, Schroder and Bunch to be more credible than that of Olson. The testimony of these men placed Olson at the scene of the crime. The immediacy with which the shots followed Olson's appearance and the fact that two of the witnesses saw his vehicle driving up the road within moments after the shots were fired pointed to the logical inference that Olson fired the shots. Though the evidence is largely circumstantial, the inference can be drawn beyond a reasonable doubt. Based on these facts, we find that there is sufficient evidence to support the finding of guilt. The trial court did not abuse its discretion by refusing to grant a new trial.

## II.

We turn next to the issue of whether the trial court abused its discretion in imposing a prison sentence rather than placing Olson on probation. Olson also attacks the reasonableness of the sentence imposed.

At the sentencing hearing, the court considered the criteria set forth in I.C. § 19–2521 to determine whether probation would be appropriate. The court stated the following reasons for choosing a sentence of incarceration over probation. In reviewing the factors in I.C. § 19–2521(2) which are to be accorded weight in favor of avoiding a sentence of imprisonment, the court found that none of those factors were present. The judge noted that Olson had a propensity for violence and appeared intrigued with firearms and other deadly weapons. Olson had a misdemeanor conviction for carrying a concealed weapon, and had admitted to the presentence investigator that he had planned to threaten his ex-wife and her family. The court saw a distinct possibility that Olson might again threaten these victims and his ex-wife. As to the

factors pointing towards imprisonment under I.C. § 19–2521(1), the court believed that there was an undue risk of re-offense. In the court's view, the protection of society, particularly of Reynolds, his wife Pamela, and Bunch, required a term of incarceration. The court additionally noted that Olson was in need of treatment which could best be provided at a state correctional institution. Deterrence of Olson was also an important consideration upon which the trial court relied in determining to impose a sentence of incarceration rather than probation.

The reasons stated by the court satisfy the criteria to be considered under I.C. § 19–2521 in determining whether a sentence of imprisonment should be imposed rather than probation. The reasons are supported by the record. We hold that the court did not abuse its discretion by initially concluding that a sentence of imprisonment rather than probation was appropriate. *State v. Averill*, 116 Idaho 181, 182, 774 P.2d 351, 352 (Ct.App.1989); *State v. Turner*, 105 Idaho 748, 750, 672 P.2d 1078, 1080 (Ct.App.1983).

■ We consider next the challenge to the reasonableness of the sentence. The primary responsibility for sentencing rests within the discretion of the trial judge. *State v. Delin*, 102 Idaho 151, 152, 627 P.2d 330, 331 (1981). In evaluating sentences imposed under the Unified Sentencing Act, I.C. § 19–2513, the minimum fixed period generally will be treated as the probable measure of confinement for the purpose of sentence review. *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct. App.1989); *see also State v. Kysar*, 116 Idaho 992, 999, 783 P.2d 859, 866 (1989). Olson does not claim that his sentence exceeds the statutory maximum. The maximum punishment for aggravated assault is a prison term of five years or a fine of five thousand dollars or both. I.C. § 18–906. Olson was sentenced to five years in prison with a fixed term of confinement of two-and-one-half years. Because Olson's sentence is within the statutory maximum, we will uphold it on appeal unless the sentencing court abused its discretion. *State v.*

*Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982).

Olson has the burden of demonstrating that the trial court abused its discretion in a sentencing matter. *State v. McPhie*, 104 Idaho 652, 656, 662 P.2d 233, 237 (1983). Reasonableness is a fundamental requirement in the exercise of discretion at sentencing. *State v. Nice*, 103 Idaho at 90, 645 P.2d at 324. Several factors are relevant in deciding whether a particular sentence is reasonable. The primary consideration in sentencing is the good order and protection of society; though humanitarian considerations and rehabilitation are important to society, they cannot be allowed to control or defeat punishment, or to force our courts to ignore or subordinate other factors to the detriment of society. *See State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956).

■ A sentence is reasonable if it accomplishes the primary objective of protecting society and meets any or all of the related goals of deterrence, rehabilitation, or retribution. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). The reasonableness of the sentence must be considered in light of the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Shideler*, 103 Idaho 593, 594, 651 P.2d 527, 528 (1982); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). The transcript of the sentencing hearing reflects the district court's proper consideration of these factors.

The district court reviewed the pre-sentence report which showed Olson's criminal record and which indicated that Olson has a propensity for violence. The court concluded that Olson, in his state of mind at the time of the trial, presented a danger to society. The court noted that Olson needed to be deterred from continuing the pattern of conduct of threatening his former wife and her family. We conclude that the court properly considered the factors set forth in *Toohill*. The defendant has failed to come forward with any convincing proof that his sentence is unreasonable. We are

unable to discern any abuse of discretion in the sentence imposed by the trial court.

### III.

We turn next to the final issue on appeal which is the question whether the trial court abused its discretion by declining to retain jurisdiction over Olson. The decision whether to relinquish jurisdiction or to grant probation rests within the sound discretion of the trial court. *State v. Averill,* 116 Idaho 181, 182, 774 P.2d 351, 352 (Ct.App.1989). A defendant is not entitled to a court hearing when the district court relinquishes jurisdiction after a period of retained jurisdiction. *State v. Ditmars,* 98 Idaho 472, 567 P.2d 17 (1977) *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978); *State v. Hall,* 112 Idaho 925, 927, 736 P.2d 1379, 1381 (Ct.App. 1987). Though the trial court was not required to hold a hearing on this matter, it did so.

At the hearing the court stated its reasons for relinquishing jurisdiction. Preliminarily, the court noted that although the retained jurisdiction committee of the Department of Correction was initially split two-to-one in favor of relinquishing juris-diction, the dissenting member of the committee changed his vote. The court stated that it was still concerned about protecting society. It noted that Olson has a problem of abusing prescription drugs and decided that he could be best rehabilitated in a prison setting where he had no access to drugs. The court concluded that Olson was not yet ready for release on probation and relinquished jurisdiction. Based on its articulated reasons for this decision, we find the trial court did not abuse its discretion in relinquishing jurisdiction.

For the reasons stated above, we affirm the judgment of conviction including the sentence, the order denying Olson's motion for a new trial, and the order relinquishing jurisdiction.

WALTERS, C.J., and SWANSTROM, J., concur.