715 P.2d 355

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Francis PALMER, Defendant-Appellant.**

**No. 15610.**

Court of Appeals of Idaho.

Dec. 30, 1985.

Rehearing Dismissed March 11, 1986.

Petition for Review Denied
May 20, 1986.

Debrha J. Carnahan, Matthews, Wilson & Carnahan, Chartered, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BURNETT, Judge.

Francis Palmer stands convicted on two counts of possessing a controlled substance. In this appeal he asserts that the district court should have suppressed evidence seized during a warrantless search of his residence by a parole officer. He also contends that evidence tending to show commission of other crimes should have been excluded at trial. We affirm the judgment of conviction.

I

When charged with the instant offenses, Palmer was on parole from sentences of imprisonment for first degree burglary. His parole agreement contained standard provisions requiring him to "live within [his] lawful income" and to "obey all ... laws." Palmer's parole officer became concerned about compliance with these conditions. Although Palmer was not fully or steadily employed, he patronized a local race track and traveled to Las Vegas. The parole officer observed Palmer associating with drug users and he heard some "rumors on the street over a period of months" that Palmer was "involved in narcotics."

These concerns were heightened by information obtained when Boise police officers searched the residence of a suspected drug dealer known as "Mr. Don." The lawfulness of that search has not been questioned in this case. The police found marijuana and drug paraphernalia, together with a list of names and telephone numbers. The police recognized several names

on the list as those of persons engaged in drug trafficking. Palmer's name also appeared on the list. Palmer's parole officer questioned "Mr. Don" about Palmer. According to the officer, "Mr. Don" responded that Palmer was "dealing in dilaudids." [1] Three weeks later the parole officer, accompanied by two probation officers and a narcotics investigator, visited Palmer at home and searched his residence without a warrant. Some eighteen Dilaudid tablets and 8.4 grams of methamphetamine [2] were seized. Palmer's parole was revoked and he was charged with two counts of possessing a controlled substance.

Palmer moved to suppress the evidence, claiming that the search had violated his rights under the fourth amendment to the United States Constitution. At the suppression hearing, "Mr. Don" denied telling the parole officer that Palmer had been "dealing in dilaudids." However "Mr. Don" also testified that someone had threatened harm to him for being a "snitch." Faced with an issue of credibility, the district judge found that "Mr. Don," in fact, had told the parole officer that Palmer was involved in drugs. This finding will not be disturbed on appeal.

■■■ Upon these facts, we turn to the fourth amendment issue. In *State v. Pinson*, 104 Idaho 227, 657 P.2d 1095 (Ct.App. 1983), we held that searches incident to probation or parole administration are not subject to the same constitutional restrictions that apply to searches generally. Due to the special nature of the parole officer-parolee relationship, warrants are not required. Moreover, the information leading to the search warrant need not satisfy the requirement of probable cause. Rather, the parole officer must have reasonable grounds to believe that the parolee has violated some condition of his parole, and the search must be reasonably related to disclosure or confirmation of that viola-

---

1. "Dilaudid" is a trademark for preparations of dihydromorphone hydrochloride, a controlled substance. The drug has narcotic analgesic effects and occasionally is used illicitly as a substitute for heroin.

2. Methamphetamine, another controlled substance, is a stimulant for the central nervous system.

tion. *Id.* at 233, 657 P.2d at 1101. The search "cannot be based upon a mere hunch without factual basis, nor upon 'casual rumor, general reputation, or mere whim.'" *Id.*, quoting *State v. Simms*, 10 Wash.App. 75, 516 P.2d 1088, 1096 (Wash. Ct.App.1973).

▮ Palmer argues that the *Pinson* standard should not be applied to a case where the search has resulted not only in revocation of parole but also in new charges of criminal conduct. We disagree. Although new charges were not filed in *Pinson,* our opinion there turned upon a balancing of privacy interests against the effective administration of probation or parole, not upon the use to which the evidence ultimately was put. Indeed, the distinction urged by Palmer would be patently unworkable. It would require parole officers to guess in advance what a search might disclose, and what uses the unseen evidence might have, in order to determine the standard by which the search later would be judged. We decline to create such a guessing game.

▮ Palmer also contends that even if *Pinson* applies here, the search fails to pass muster because reasonable grounds did not exist to believe that he had violated the conditions of his parole. Palmer characterizes the information as nothing more than "casual rumor" or "general reputation." This argument might be stronger if the parole officer had acted before the police searched "Mr. Don's" house. Prior to that search, the parole officer merely had general concerns about Palmer's lifestyle and had heard "rumors on the street." But after the search of "Mr. Don's" house and the ensuing discussion with "Mr. Don," the parole officer knew that Palmer's name was on a telephone list that included known drug users. The parole officer also had a first-hand statement, from an identified and presumably knowledgeable source, that Palmer was dealing in a specific controlled substance. In its totality, this information went beyond "casual rumor" or "general reputation." It provided reasonable grounds to believe that

Palmer was violating the conditions of his parole.

Palmer further argues that the second *Pinson* requirement, that the search be reasonably related to disclosure or confirmation of the violation, has not been satisfied. Palmer apparently bases this argument upon the fact that nearly three weeks elapsed between the parole officer's conversation with "Mr. Don" and the search of Palmer's residence. The parole officer testified that during this period, he arranged for other persons to help him in the search and he endeavored, albeit unsuccessfully, to acquire more information about Palmer's alleged drug dealings. *Pinson* explicitly recognized a parole officer's right to obtain assistance for conducting a search. 104 Idaho at 233, 657 P.2d at 1101. The parole officer's efforts in this case to develop additional information do not, in our view, derogate from the strength of the information already in hand or from a reasonable relationship between the search and its purpose. We conclude that the *Pinson* tests have been satisfied. We uphold the district court's refusal to suppress the evidence.

## II

We next consider Palmer's contention that the district court erred by admitting evidence at trial that tended to show the commission of crimes other than those with which he was charged. The evidence consisted of (a) documents showing large cash transactions and (b) testimony about other controlled substances found during the search of Palmer's residence.

## A

The prosecution introduced bank deposit slips and money order receipts showing that Palmer handled several thousand dollars during a period of approximately six weeks. This period embraced the point in time when "Mr. Don" said that Palmer was dealing in drugs. The prosecution's reason for presenting this evidence was straightforward. Although Palmer had not been charged with delivery or intent to deliver

controlled substances, he was charged with knowingly possessing them. Palmer's defense simply was that he had not known about the controlled substances found at his residence. The prosecution argued that Palmer's unusual cash flow reflected drug dealings and negated Palmer's claim of ignorance.

It cannot be gainsaid that the evidence implicated Palmer in crimes beyond those charged. But Palmer has not cited, nor has our research disclosed, a *per se* rule specifically barring evidence of drug dealings as a means of establishing the *scienter* element of drug possession. The issue appears to be governed by the general rule articulated by our Supreme Court in *State v. Wrenn*, 99 Idaho 506, 584 P.2d 1231 (1978). There the Court held that evidence of other crimes is inadmissible to show criminal propensity on the part of the accused. However, evidence of other crimes is admissible when relevant to prove: (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of the crime on trial, and (6) other similar issues. A similar statement now appears in Rule 404(b) of the Idaho Rules of Evidence (I.R.E.):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The district judge held, and we agree, that evidence of the financial transactions was relevant to prove Palmer's knowledge of the controlled substances in his possession. Rule 401, I.R.E. defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See also State v. Farris*, 48 Idaho 439, 282 P. 489 (1929). Here, the jury was entitled to infer the existence of drug dealings from the financial transactions. The evidence tended to make Palmer's awareness of the controlled substances more probable than it would have been without such evidence.

■ Of course, even if evidence is relevant, it may, and should, be excluded if the impact of unfair prejudice outweighs the probative value of the evidence. I.R.E. 403; *State v. Matthews*, 108 Idaho 482, 700 P.2d 104 (Ct.App.1985). The weighing process is committed to the trial court's sound discretion. The pivotal point is the unfairness of any prejudice. Prejudice alone will not tilt the scale against admission of the evidence. "Probative evidence is always prejudicial to someone." *State v. Fenley*, 103 Idaho 199, 203, 646 P.2d 441, 445 (Ct. App.1982). In this case, we find nothing inherently inflammatory about the evidence of financial transactions. As the district judge noted, the prejudicial impact of the evidence was produced largely by its probative value—the tendency to show that Palmer was dealing in drugs. Although we do not suggest that the evidence was entirely free from unfair prejudice, we think the task of balancing such prejudice against probative value was carefully performed by the district judge. We find no abuse of discretion in admitting the evidence.

■ Before leaving the subject of the financial transactions, we note that Palmer has also challenged the deposit slips and money order receipts as hearsay and as tardily disclosed evidence. However, no objection based upon the hearsay rule was made at trial. The error, if any, is not fundamental and will not be considered for the first time on appeal. With regard to disclosure, it appears that defense counsel did not receive the documents until the eve of trial. However, the existence of the documents had been disclosed earlier as part of the state's response to a request for discovery. Palmer obviously was aware of the documents. Moreover, the record indicates that Palmer's girlfriend had copies of them. One day before trial, the state in-

formed the defense that it would introduce the documents. The defense requested no continuance to meet the evidence. In light of all these circumstances, we sustain the trial court's decision to admit the evidence.

**B**

During the search of Palmer's residence, a small amount of marijuana and several tablets of Limbitrol[3] were found in addition to the Dilaudid and methamphetamine. These additional substances were not introduced into evidence but there was testimony about them. The narcotics investigator who participated in the search mentioned the Limbitrol during direct examination. On cross-examination, when asked if he had found "any drug paraphernalia," he replied, "Other than small amounts of a little bit of marijuana, just—and that was about it." The defense did not object to the references to Limbitrol and marijuana when they occurred. However, counsel later moved unsuccessfully for a declaration of mistrial.

On appeal, the standard for reviewing the denial of a motion for mistrial is reversible error. That is, the appellant must not only show that error occurred but also that the error was reversible rather than harmless. An error may be deemed harmless unless it appears from the whole record that the error "contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the [error] not occurred." *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983).

Here, even if we assume that error was injected into the trial by the mention of Limbitrol and marijuana, we are not persuaded that it was reversible. The resultant prejudice was not entirely unfair. The jurors could have inferred from the testimony—as they implicitly did from the financial transactions—that Palmer was aware of controlled substances at his residence. Concededly, some unfair prejudice might have been created by an implicit suggestion that a person who keeps Limbi-

trol and marijuana has a criminal propensity to possess other controlled substances as well. However, the overwhelmingly dominant focus of the trial was upon the substances charged. The other substances received scant mention. The evidence showing possession of the substances charged was, in the district judge's view, "abundant." Palmer was the sole occupant of the place where the substances were found. During the search he made a furtive attempt to conceal a cigarette package containing the methamphetamine. Although he testified at trial, Palmer made no effort to explain how any controlled substances could have been located on the premises without his knowledge.

We conclude beyond a reasonable doubt that the passing references to Limbitrol and marijuana did not create prejudice sufficient to affect the outcome. Accordingly, we decline to overturn the judge's ruling on the mistrial motion. The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**3.** "Limbitrol" is a trademark for a combination of amitriptyline and chlordiazepoxide. The drug, a mild central nervous system depressant, is a controlled substance.