977 P.2d 211

STATE of Idaho, Plaintiff–Respondent,

v.

Daryl R. BYINGTON, Defendant–
Appellant.

No. 23273.

Court of Appeals of Idaho.

May 29, 1998.

Review Granted June 23, 1998.

The Roark Law Firm, Hailey, for defendant-appellant. D. Doug Nelson argued.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for plaintiff-respondent. Catherine O. Derden argued.

PERRY, Judge.

Daryl R. Byington was found guilty by a jury of two counts of sexual abuse of a child under the age of sixteen years. I.C. § 18–1506. On appeal, Byington raises several claims for relief. For the reasons set forth below, we affirm.

## I.

### BACKGROUND

A neighbor observed Byington playing in his backyard with children, particularly female children ages nine to eleven, in what the neighbor thought was an inappropriate manner. The neighbor contacted the authorities and an investigation ensued. Officers executed a search warrant of Byington's residence and seized numerous magazines, video-

tapes, books, catalogs and pictures in Byington's bedroom. The officers also seized some children's clothing, including undergarments, which were in Byington's closet.

Byington was charged with three counts of disseminating harmful material to a minor. I.C. § 18–1515(1)(a). These charges were not joined in this case. Byington was also indicted on four counts of sexual abuse of a child under the age of sixteen based on statements from several of the children who played at Byington's residence. Byington moved to suppress the evidence seized, based on the argument that officer Riemann's affidavit, which supported the issuance of the search warrant, contained numerous false statements, omitted exculpatory information and therefore lacked probable cause. The district court denied the motion following an extensive *Franks*[1] hearing. Byington also moved in limine to exclude evidence of "all videotapes, books, magazines, catalogues, newspapers, photographs, negatives, clothing, bottle rockets and other items seized from Defendant's residence and any and all references thereto." The district court reserved its ruling on Byington's motion in limine. This evidence was ultimately admitted at trial over Byington's objection.

Byington's trial began on Tuesday, April 9, 1996. After the first day of trial, the prosecutor was contacted by Maia Black, Byington's twenty-year-old step-niece who disclosed that she had been sexually abused by Byington when she was a child. The prosecutor proceeded to make arrangements to fly Black to Idaho in order for her to testify at Byington's trial. The prosecutor also contacted Byington's counsel and notified her of Black's name and that she lived in Oakland, California. Black arrived in Blaine County on Wednesday, April 10, 1996. On Thursday, April 11, the state made an offer of proof of Black's testimony. Byington objected on several grounds. The district court continued the proceedings until the following morning. On Friday, April 12, the district court ruled that Black's testimony was admissible. However, the district court granted Byington

a continuance until the following Monday, with respect to Black's testimony only, so that Byington's counsel could have the weekend to prepare for Black's testimony.

On Monday, April 15, Byington's counsel requested another continuance, arguing that she needed additional time to conduct her investigation. The district court denied the motion, and Black testified later that morning.

After a two-week trial, the jury found Byington guilty of two counts of sexual abuse of a child and acquitted him of the third count.[2] The district court sentenced Byington to a fixed three-year term of incarceration on the first count. On the second count, the district court imposed a consecutive unified sentence of fifteen years with three years fixed. Byington appealed.

## II.

## DISCUSSION

### A. Probable Cause for Search Warrant

Byington alleges that officer Riemann's affidavit, which supported the issuance of the search warrant, contained numerous false statements and omitted exculpatory information. Byington contends that officer Riemann either purposely made those false statements or that the officer's failure to properly document interviews and other information rose "to the level of reckless disregard for the truth of the information presented."

In *State v. Rigoulot*, 123 Idaho 267, 846 P.2d 918 (Ct.App.1992), this Court set forth the following standard for challenges to a search warrant:

> When a defendant challenges a warrant with the assertion that it was procured with false information, he must show by a preponderance of the evidence that the false information was included in the warrant affidavit knowingly and intentionally, or with reckless disregard for the truth. This rule also applies to relevant information allegedly wrongly omitted with the

---

1. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979).

2. The fourth count had been dismissed by the state prior to trial.

intent to mislead the magistrate. However, negligent or innocent misrepresentations, even if necessary to establish probable cause, will not invalidate a warrant. If information is presented to the magistrate negligently or innocently, the information must be included in the court's consideration of the totality of the circumstances in determining whether the magistrate had a substantial basis to find probable cause. On the other hand, if false information was given intentionally or with reckless disregard for the truth, it must be set aside and the magistrate's finding of probable cause must be reviewed upon the remaining evidence.

When, in response to a motion to suppress, a district court has ruled that "mere negligent representations" were made in support of a search warrant issued by a magistrate, and the district court's findings are supported by substantial, albeit conflicting, evidence, they will not be disturbed on appeal. Whether false statements or omissions are intentional or reckless is a factual finding reviewed under the clearly erroneous standard.

*Rigoulot*, 123 Idaho at 270–71, 846 P.2d at 921–22 (citations omitted).

The district court provided the following analysis in its order denying Byington's suppression motion:

6. The probable cause in support of the search warrant was obtained pursuant to a number of interviews with the alleged victims and/or witnesses. The affidavit recites probable cause to support at least two separate crimes, one relative to the sexual abuse of a minor under sixteen, and the other relative to the dissemination of material harmful to minors. If the court were to disregard all of the representations made in the affidavit of probable cause except those representations related solely to the dissemination of the harmful materials, those representations, standing alone, would support a finding of probable cause to support the issuance of the search warrant. Specifically, Riemann states in the affidavit, paragraph 11:

T.W. told me that Daryl Byington sometime during the summer months of 1995, showed T.W. and J.R. X-rated video tapes that had X's on them. T.W. named the movies as "Perfect girls", "Wet Nurses", Nudist Camp movies, and a movie with muscle men having sex. T.W. said that the movies depicted naked adults having sexual intercourse. T.W. said that there were several movies in Daryl Byington's bedroom, which is where she and J.R. watched them.

Riemann obtained this information from an interview he conducted with [T.W.] on October 19, 1995, prior to the issuance of the search warrant. A transcript of the interview is State's exhibit 2 A. In the transcript from the interview, pages 9 and 10, [T.W.] states that although she and [J.R.] started to watch the video tape, Byington let the girls watch the tape. [T.W.] also stated that the tape was rated "X" and "about people having sex." [T.W.] stated further that Byington was present while the girls watched the video.

7. Riemann does not expressly represent in the affidavit that [T.W.] provided him with the names of the movies. Riemann testified at the suppression hearing that some of the information he obtained was from Trina Fisher who also interviewed [T.W.]. Fisher works for the State of Idaho, Department of Health and Welfare, as a Social Worker, and was part of the child abuse team assembled by Riemann for conducting interviews with the minor children involved in this case. Fisher interviewed [T.W.] once with Riemann on October 19, 1995, and once with Sergeant Ron Taylor on October 20, 1995. A transcript of this second interview is State's exhibit 4. During the second interview, [T.W.] stated the names of the videos to the best of her recollection. [T.W] also stated that Daryl showed her the movies. State[']s exhibit 4, page 1. Further, [T.W.] stated that Byington described the movies as a "porno" and that Byington put the video tape in the VCR. State[']s exhibit 4, page 3.

8. Although the affidavit does not expressly state that [T.W.] conveyed the names of the videos to Riemann personally, such an inference can be drawn from

the way the paragraph 11 of the affidavit is worded. However, the fact that the affidavit does not state that Riemann learned the information from Fisher is not material. First, the names of the videos are not necessary to the establishment of probable cause. Next, in applying a "totality of circumstances" standard, this is not a case where Riemann was relying on hearsay from a confidential informant. Rather, Riemann obtained the information from Trina Fisher who was a member of the investigation team which Riemann personally assembled for purposes of conducting interviews. Therefore, this Court finds that the failure to disclose Trina Fisher['.]s name amounts to nothing more than an innocent mistake. The issue in this case is the reliability of the substantive information contained in the affidavit. Simply put, if Riemann had included that he had obtained the names of the videos from a member of his investigation team, the basis for probable cause would not change.

9. Idaho Code § 18–1515 states in relevant part (with emphasis):

Disseminating material harmful to minors—Defined—Penalty.—A person is guilty of disseminating material harmful to minors when:

1. He knowingly gives or *makes available* to a minor or promotes or possesses with intent to promote to minors, or he knowingly sells or loans to a minor for monetary consideration:

(a) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct or sadomasochistic abuse and which is harmful to minors; or

. . .

(c) Any other material harmful to minors.

2. With reference to a motion picture, show or other presentation which depicts nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, he knowingly:

. . .

(d) Exhibits such motion picture, show or other presentation to a minor not for a monetary consideration.

The facts related to Riemann by [T.W.] would support a finding of probable cause that Byington violated Idaho Code § 18–1515 and that the videos at issue were, at least at the time of the alleged viewing, at Byington's residence. On that basis this court finds that a search warrant would issue on this allegation alone (subject to staleness of the information or remoteness in time), irrespective of the representations made relative to the sexual abuse allegations. Whether or not Byington did in fact "show" or otherwise "make available" the video tapes to the girls is a jury question.

. . . .

After reviewing the underlying basis for the probable cause in support of the search warrant, it is apparent to this Court that the mistakes made in Riemann's affidavit were not knowingly, or intentionally made, or made with the reckless disregard for the truth.

■ On review, we conclude that the district court's findings are supported by substantial and competent evidence. Because the search warrant was supported by probable cause on the dissemination charges, it is unnecessary for this Court to independently review whether there was probable cause to support the search warrant on the sexual abuse charges. Accordingly, the district court did not err in denying Byington's motion to suppress.

## B. Scope of Search Warrant

Byington asserts that the "seizure of the magazines, catalogs, pamphlets and books which do not depict 'nudity and/or sexual activities' and the seizure of the children's clothing clearly exceeded the scope of the search warrant." The state submits that this issue was not raised below and that Byington is precluded from raising the issue for the first time on appeal.

■ Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge,* 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *Sanchez v. Arave,*

120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). *But see State v. Raudebaugh,* 124 Idaho 758, 762, 864 P.2d 596, 600 (1993). Byington did not raise this issue for consideration before the district court. Byington is therefore precluded from raising this issue for the first time on appeal.

## C. Motion in Limine

At trial, the state offered to introduce evidence taken from Byington's residence which was, as Byington alleges, neither pornographic nor sexually-related. These items included clothing catalogs, books, videotapes and magazines. The state also offered girls' undergarments which included numerous pairs of underwear and bras that had been found in Byington's bedroom closet. Byington renewed his motion in limine on which the district court had, prior to trial, reserved its ruling. Following argument, the district court denied Byington's motion. In admitting the evidence, the district court determined that Byington's state of mind was at issue in this case—whether Byington intended to gratify the lust, passions, or sexual desire of either himself or the victims.

On appeal, Byington contends that the district court erred in ruling that this evidence was relevant. Byington also asserts that the prejudicial effect of the evidence outweighed its probative value.

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401; *State v. Johnson,* 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). Whether evidence is relevant is an issue of law. *State v. Atkinson,* 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct.App.1993). Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. The trial court's conclusion that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice is reviewed under an abuse of discretion standard. *State v. Matthews,* 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct.App.1993). When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ We first address whether this evidence was relevant. At trial, it was undisputed that Byington had physical contact with the victims, whether it was through tickling and wrestling with the victims, picking them up and carrying them around or letting the victims sit on his lap. Byington's defense focused on establishing that his conduct with the victims was innocent and without sexual intent. Byington also asserted that his alleged inappropriate touching was accidental. The state, however, sought to establish that Byington's conduct was done with the intent to gratify his sexual desires. Thus, the essential inquiry for the jury was to determine Byington's intent underlying the alleged criminal acts. The challenged evidence was submitted, therefore, to aid the jury in making this determination.

After thorough review of what is a close question, we are of the opinion in this particular case that the challenged evidence met the required test for relevancy. The evidence was probative of Byington's preoccupation and attraction toward female children, which was relevant in the jury's determination on the contested issue of whether Byington had the necessary intent when committing the acts. The evidence included a substantial quantity of magazines, catalogs and books. Many of these items were bookmarked on pages where female children were exhibited typically wearing only bathing suits or undergarments. We also note the vast quantity of the challenged evidence. Standing alone, each particular piece of evidence may not have been relevant. The totality of the evidence, however, provided the jury insight into Byington's state of mind at the time of the alleged acts.

Additionally, we note the relevancy of the challenged evidence when considered as a whole with the other items of admitted evidence. This evidence included literature on children's sexual development and on sexual education. There was also nudist-camp literature. These items contained pictures of naked female children and, as with the challenged evidence, were bookmarked on these pages. All this evidence was consistent in illustrating Byington's preoccupation and attraction toward female children. Therefore, for the above reasons, we conclude that the challenged evidence was relevant on the disputed issue of whether Byington possessed the necessary intent to commit the crimes.

■ Next, we determine whether this evidence met the Rule 403 balancing test. The challenged evidence, especially considered as a whole with all the admitted evidence, highlighted Byington's preoccupation and attraction toward female children. Hence, as concluded above, the evidence was probative on the contested issue of Byington's state of mind at the time of the alleged acts. Although the evidence was arguably prejudicial, as with most probative evidence, our inquiry is the unfairness of the prejudice. *State v. Palmer*, 110 Idaho 142, 146, 715 P.2d 355, 359 (Ct.App.1985). On review, we conclude that any unfair prejudice resulting from this evidence did not substantially outweigh its probative value. Accordingly, we hold that the district court aptly conducted its balancing test and did not abuse its discretion in admitting the evidence.

### D. Late Disclosure of Witness

Byington claims that his constitutional right to a fair trial was denied when the district court permitted Black to testify on Monday, April 15, despite Byington's request for a second continuance. Byington contends that the late disclosure of Black "severely altered [defense counsel's] trial strategy and seriously prejudiced the defense." In his brief on appeal, Byington refers to comments made during trial by the prosecutor:

I think when the court looks at the probative value and the importance of this evidence and balances it against the danger of unfair prejudice, the inquiry is whether the

unfair prejudice is sub—the inquiry is whether that probative value, that very strong probative value is substantially outweighed and those are the key two words, substantially outweighed by this unfair prejudice. And, Your Honor, I do not believe that that's the case. *I think, you know, you talk about the opposite being the case. If this evidence doesn't come in, I mean this is the state's most compelling evidence in this case.*

Byington asserts that for "the court to expect Byington to meet 'the most compelling evidence in the case' by working on it over the weekend, flies in the face of reason."

■ The decision to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993); *State v. Rhoades*, 120 Idaho 795, 812, 820 P.2d 665, 682 (1991). The Idaho Supreme Court has held that where the denial of a motion to continue is attacked on the basis of late disclosure or discovery of evidence, the alleged tardiness of the disclosure must be shown to so prejudice the defendant's case preparation that a fair trial was denied. *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995); *State v. Smoot*, 99 Idaho 855, 858–59, 590 P.2d 1001, 1004–05 (1978). To prove prejudice, the defendant has the burden to show there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different. *Tapia*, 127 Idaho at 255, 899 P.2d at 965; *State v. Spradlin*, 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct.App.1991).

In *Tapia*, the Idaho Supreme Court addressed a similar situation where the state offered to call two witnesses who had not been discovered until after the defendant's trial had begun. The trial court granted the defendant a one-day continuance to interview the newly discovered witnesses. The defendant requested another continuance but it was denied by the district court. On appeal, the Supreme Court addressed the prejudice allegedly suffered by the defendant. The Court noted that the defendant "did not show what investigative methods [he] might have used or what additional evidence [he] could have established with the extra time." *Ta-*

*pia*, 127 Idaho at 255, 899 P.2d at 965. The Court then concluded that the defendant's argument on appeal amounted "to nothing more than the kind of bare claim that falls short of demonstrating unfair prejudice." *Id.*

In the case at bar, Byington makes the bare assertion that Black's testimony severely altered counsel's trial strategy and seriously prejudiced. the defense. However, Byington, akin to the defendant in *Tapia*, has failed to demonstrate what investigative methods he might have used or what additional evidence he could have discovered had he been given extra time. Moreover, Byington has failed to show how his trial strategy would have been different if his second continuance motion had been granted. In sum, Byington has failed to show that the result at trial would have been any different had the district court granted the second continuance motion. *See Tapia*, 127 Idaho at 255, 899 P.2d at 965; *Spradlin*, 119 Idaho at 1034, 812 P.2d at 748. Byington has therefore failed to carry his burden to show that his substantial rights were prejudiced by the late disclosure of Black. Hence, we conclude that the district court did not err in denying Byington's second continuance motion and in permitting Black to testify.

### E. Black's Testimony

Byington argues that the admission of Black's testimony concerning prior episodes of touching between Black and Byington constituted reversible error under I.R.E. 404(b). Byington also argues that even if the testimony was relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under I.R.E. 403.

Byington asserts that there was not enough similarity between the allegations by Black of episodes eleven years earlier and the allegations in the indictment for Black's testimony to be relevant. First, the girls were all three to five years older than Black. Second, the girls were never touched while in Byington's room. Third, the touching of the girls almost never occurred in private. Fourth, the girls were not related to Byington. Byington also argues the remoteness of time—the alleged conduct with Black occurred eleven to fourteen years before the alleged crimes in this case.

Regarding intent, Byington asserts that there was simply no nexus between what Black said occurred to her and what the three girls said occurred at the time of the alleged crimes. Byington contends that the only reason for offering this evidence was to prove that Byington exhibited a character trait of a child abuser and that he acted in conformance with that trait in this particular instance.

Generally, under I.R.E. 404(b), evidence of other crimes, acts or wrongs is inadmissible for the purpose of showing a person's character to prove that he or she acted in conformity therewith. *State v. Atkinson*, 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct.App.1993). Evidence of other crimes, wrongs or acts may be admitted, however, when relevant for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. I.R.E. 404(b); *State v. Zimmerman*, 121 Idaho 971, 977, 829 P.2d 861, 867 (1992).

A two-tiered analysis is used to determine the admissibility of evidence concerning other crimes, wrongs or acts. *See Zimmerman*, 121 Idaho at 977–78, 829 P.2d at 867–68. First, the trial court must determine that the evidence is relevant. *Id.* Second, if the trial court finds that the evidence is relevant, it must then determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. I.R.E. 403; *Zimmerman*, 121 Idaho at 977–78, 829 P.2d at 867–68.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401; *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). Whether evidence is relevant is an issue of law. *Atkinson*, 124 Idaho at 819, 864 P.2d at 657. Therefore, when considering a trial court's admission of I.R.E. 404(b) evidence, we exercise free review of the trial court's admissibility determination. *Id.* However, when re-

viewing the determination that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice—the second tier of the analysis—we use an abuse of discretion standard. *Id.*

 In admitting Black's testimony, the district court ruled as follows:

Sexual cases where there is no actual intercourse or genital to genital contact, et cetera, such as is alleged here and especially with minors are unique cases, because of the intent issue and because a child may or may not recognize what is appropriate conduct and/or touching.

The analysis applied in cases such as this, and I think the Idaho case law is well-settled in this area, is, as I understand it, as follows: First, the evidence offered must be relevant to a material and disputed issue concerning the crime charged. Second, is the balancing of the probativeness of the evidence offered versus the prejudicial impact of the offered prior bad acts evidence. The first is the 404(b) and the second is the 403.

The first prong relevant to a material and disputed issue concerning the crime charged, in this case, the intent of the defendant in touching of the three children is squarely at issue and has been so called into question by the defendant. In other words, the defendant's state of mind is clearly at issue here. Credibility of the child victims is also squarely at issue here. All of the evidence in this case involves children, the alleged victims, in at least the three charged, in an approximate identifiable age group of 9 to 11 years of age.

The evidence in this case thus far is that the defendant provided certain amusements and attractions to the children to befriend them and attract them to his residence.

There, at this point, is no uncontradicted evidence that the defendant Byington inappropriately touched [J.L.]. The Manteys saw him touch another girl in what they described as an inappropriate fashion. And in her five or six visits to his home, [A.M.] was tickled, sat on his lap and so forth and that the defendant may have accidentally touched her breasts.

[T.W.]'s testimony, she described physical touching of the breasts. And, therefore what is a very important distinction in this case and the record needs to be very crystal clear on this point, is that the proffered evidence of Maia Black is not being offered to prove physical acts of touching by this defendant. There is uncontradicted evidence of that in this record. Rather the evidence is offered for another purpose.

There are four reasons, at least, for admitting the Maia Black testimony. First, is the issue of intent. The testimony of Maia Black is probative of intent. One inference that can be drawn from the evidence thus far in the charged cases is that Byington's quote, "touching," end quote, was either an accident or was innocent or was horseplay, if you will.

There has already been evidence again that there was physical contact between the girls and Byington, i.e. tickling on the knees, hand between the legs of [J.L.], under the armpits, sitting on the lap, lifting with the hand in the crotch again, et cetera. Therefore, it's clear that the defendant Byington's state of mind is at issue. Maia Black's testimony is highly probative of both intent and in absence of mistake.

The cases that support that are *State v. Matthews* at 124 Idaho 806, 864 P.2d 644, Court of Appeals 1993 case; *State v. Phillips,* 123 Idaho 178, 845 P.2d 1211, [Supreme Court] case 1993. Again, to show whether or not this touching or horseplay or otherwise was intentional and not accidental. Specifically, in the *Matthews* case, the defendant's contention was that the conduct was innocent snuggling and there is a striking resemblance on that basis here.

. . . .

Secondly, the reason for admitting the Maia Black testimony is on the common scheme or plan. Black's testimony was probative of Byington's common scheme or plan with such factors as follows. First of all, it's all over-the-clothes touching. The age group of the girls. Admittedly, Maia

Black was somewhat younger by about three years, approximately, than the youngest girl when the three charged cases started here.

Although, I think in fairness to the record, in Maia Black's testimony, if you take her testimony at face value, which the court has to do for this analysis, is that Byington's stopping of the inappropriate touching of Maia Black at age nine or nine and a half didn't occur because Byington voluntarily stopped; it occurred because the child moved. So that distinction needs to be made.

The attractive amusements, according to Maia black, have strong resemblance to the attractive amusements in this case. The gifts, the child—or Maia Black explains as a child, that she got what she thought was an expensive gift. The gaining trust and the confidence of the children, befriending them, sitting on the lap, also the driving, talking, the wrestling, and general interaction with the girls, I think also, the showing or making available pornography to arouse the curiosity and or lower barriers and defenses of the children are all common similarities and go to unidentifiable group of children. I don't think there is any real magic to whether it's six or eight or nine or eleven. The fact is they're all younger female victims.

Black's testimony yesterday was also almost identical with respect to the ways Mr. Byington treated the children. Between Black versus these three child witnesses, who are the alleged victims in this case, that is his method; again befriending, rides, food, money, movies, gifts, et cetera, lead to molestation; and therefore, I think there is way more than enough evidence of a common plan or scheme.

. . . .

In this case, again, there is a lot more than just the identifiable class. Byington's behavior patterns and conduct are virtually identical, again, with respect to Maia Black and the girls who testified in this trial.

The supporting authority for that is *State v. Moore,* 120 Idaho [743, 819 P.2d 1143]; *State v. Phillips,* 123 Idaho 178, 845 P.2d 1211; *State v. LaBelle,* 126 Idaho 564,

887 P.2d 1071; *State v. Tolman,* 121 Idaho [899, 828 P.2d 1304], I believe.

The next issue or the third reason that it is admissible, although the one that the court puts the least emphasis on is the issue of corroboration. . . .

But it's well-settled in this state that that is admissible on that purpose and so in that regard, Black's testimony also corroborates the testimony of the girls with respect to the touching.

[J.L.]'s credibility was at issue with respect to the lifting her by her crotch. It also corroborates the testimony of the girls with respect to sitting on the lap, tickling under the arms and ribs and picking them up; again, for authority, *State v. Phillips* at 123 Idaho 178, 845 P.2d 1211.

And that, of course, the last or fourth reason, which is the flipside of the first, is the absence of mistake or accident, which is the flipside of intent and we've already really covered that. But again, that's *State v. Matthews* and the innocent snuggling case.

. . . .

I also do not believe that it's necessarily dispositive that Maia Black had at times lived at the Byington house versus the neighborhood kids coming over there. I think that the blood relationship and/or marital relationship, as opposed to a total stranger, is not dispositive. The real dispositive matter to me is the identifiable class of victims, i.e., females who are of the relevant age group that we've been talking about.

Again, as to remoteness in time and as previously stated with respect to *Labelle* that goes to weight rather than admissibility. So therefore, I would find under the 404 analysis, that the evidence is relevant and relevant to a material and disputed issue concerning the crimes charged.

The district court's reasoning regarding the relevancy of Black's testimony is cogent and well-founded in accordance with established Idaho precedent. Therefore, we conclude that the district court did not err in finding the evidence to be relevant. We also note that the district court, prior to Black's testi-

mony, gave the jury the following limiting instruction: "You may only consider this evidence in connection with determining the following issues. The defendant's intent, absence of mistake or accident or whether the defendant employed a common plan or scheme regarding the offenses alleged in this case." The district court also gave a general limiting instruction with the final instructions given to the jury. We presume that the jury followed the instructions given by the district court. *See State v. Hedger*, 115 Idaho 598, 601, 768 P.2d 1331, 1334 (1989); *State v. Rolfe*, 92 Idaho 467, 471, 444 P.2d 428, 432 (1968); *State v. Boothe*, 103 Idaho 187, 192, 646 P.2d 429, 434 (Ct.App.1982).

Next, we address the second prong of the prior bad acts analysis—a balancing of the probative value of the evidence with the danger of unfair prejudice. As noted, we review this prong under an abuse of discretion standard.

In its analysis, the district court considered several factors, including the similarity of the occurrences as to the method of enticement and the age of the children. The district court also noted the probative value of the evidence, as examined in the court's ruling in its determination that the evidence was relevant. Furthermore, in analyzing the probativeness of Black's testimony, the district court recognized that several of the victims were still Byington's friends and that they were at an age where "they may or may not [have been] able to understand or completely appreciate what [was] going on."

We conclude that the district court utilized reason and proper legal standards in deciding to admit the testimony. Accordingly, the district court did not abuse its discretion in finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## F. Sufficiency of Evidence

Byington challenges the sufficiency of the evidence supporting the jury's findings of guilt. A jury's verdict will not be set aside if there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A jury is entitled to draw any reasonable inferences from the evidence presented. On appeal, the evidence is viewed in the light most favorable to the prosecution, and the reviewing court is precluded from substituting its judgment for that of the jury as to the credibility of the witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence. *State v. Peite*, 122 Idaho 809, 839 P.2d 1223 (Ct.App.1992).

Part of our inquiry requires that we address whether Byington possessed the necessary intent to "gratify the lust, passions, or sexual desire" of himself or the victims. I.C. § 18–1506(1). The intent of the accused is a question of fact for the jury to determine. *State v. Bolton*, 119 Idaho 846, 851, 810 P.2d 1132, 1137 (Ct.App.1991); *State v. Atwood*, 105 Idaho 315, 319, 669 P.2d 204, 208 (Ct.App.1983). Direct evidence as to intent is not required. *State v. Bronson*, 112 Idaho 367, 369, 732 P.2d 336, 338 (Ct.App. 1987). A jury may infer intent from the commission of acts and the surrounding circumstances. *State v. Nastoff*, 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct.App.1993). *See also* I.C. § 18–115.

The trial evidence showed that Byington had a trampoline in his backyard and allowed the neighborhood children to play on it. The trampoline attracted numerous children of various ages. Byington gave treats and small amounts of money to the children. On occasion, Byington took some of the children four-wheeling and snowmobiling. Byington also took the children for drives in his vehicle and let them sit on his lap and steer.

Byington had a large quantity of magazines, books, catalogs and videotapes that he kept in his bedroom, some of which were pornographic or sexually-related. Many of the magazines and books were bookmarked on pages where female children were exhibited typically wearing only bathing suits or undergarments. Some of the magazines and books showed naked pictures of female children. Byington generally kept his door locked. However, the children would sometimes sneak into his room.

The state called J.L. and T.W., two of the victims, to testify in support of its case. The first child, J.L., testified that Byington made her sit on his lap and held her down when she tried to get up. Once she got up, Byington placed his hand underneath her buttocks. J.L. testified that Byington often picked her up, with one of his hands being in her crotch area. Byington repeatedly engaged in this behavior despite J.L.'s protests that she did not like to be picked up in this manner and her requests that Byington stop. J.L. testified that Byington also touched and grabbed her thighs and buttocks. J.L. also testified that Byington showed her pornographic photographs in magazines, including a photograph of a girl "licking another girl's vagina."

The second child, T.W., testified to an incident that occurred while she and her friend spent the night at Byington's house. The children were lying on the trampoline, with Byington, when T.W. accidentally kicked Byington "in the balls." Byington reacted by slapping at T.W.'s breasts, stating that he could "always grab these." T.W. testified to another incident where she and her friend sneaked into Byington's room and started watching a pornographic video. Although Byington tried to get the girls out of his room, he stayed and watched part of it with them.

T.W. also described times she and her friend went driving with Byington. T.W. sat on his lap and steered while he drove. In response to the girls' questions, Byington talked in graphic terms about sex and his first sexual experiences. Byington also made statements such as "men liked small breasts" and "men liked women when their legs were spread apart."

As further evidence of the state's case, the state attempted to establish that Byington may have had an erection while T.W. sat on his lap when they were driving in his pickup. The state also questioned T.W. as to whether Byington talked about adjusting his "balls" while T.W. sat on his lap. T.W., however, recalled only feeling his thighs and knees while sitting on his lap. T.W. also stated that she did not recall him talking about adjusting anything besides his leg which may have fallen asleep. The state had a portion of T.W.'s grand jury testimony published to the jury. The following is the relevant part of that testimony:

QUESTION: Why don't you describe what, if anything, Daryl would have you do when you sat on his lap? What happened when you sat on his lap when you would go for these drives?

ANSWER: When we'd just start out driving, then we'd have to stop, because then we'd ask, "Why are we stopping?" And he'd go, "I have to adjust my balls." And when he did, they were like, they were so—he'd adjust them so that they wouldn't be sticking like almost up your rear end."

QUESTION: Well, could you feel something?"

ANSWER: Yes.

QUESTION: What could you feel?"

ANSWER: Well, you could feel him sweating a lot down there and you can also feel—well, when he'd adjust his balls, you could feel them, because they were like right on your butt.

In addition to the above evidence, the state called Black. Her testimony, as noted above, was admitted for the limited purpose of evidencing Byington's "intent, absence of mistake or accident" and whether he "employed a common plan or scheme regarding the offenses alleged in this case." Black's testimony showed that Byington followed the same course of behavior with her as with the victims—the attractive amusements, food, small gifts and tickling behavior. She testified that he would pick her up with his hands in her crotch area and near her breasts. She testified that she thought his touching was intentional and sexual in nature. Black also testified that she watched pornographic-type programming with Byington in his room. Black's testimony was also probative on the issue of intent. Black was able to recall times when she sat on Byington's lap and felt, what she thought, was an erection.

After reviewing the evidence adduced at trial, we conclude that there was substantial evidence to sustain the jury's two findings of guilt.

## G. Sentencing

The district court imposed a fixed three-year term of incarceration on the first count. On the second count, the district court imposed a unified fifteen years of confinement, with three years fixed, to run consecutive to the first count. On appeal, Byington claims that he was sentenced to an excessive term of confinement. Byington notes that he had no criminal record prior to this case, he participated in community service events and held the same job since 1979. Byington further notes that he does not drink alcohol and has never used illegal drugs.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). In this case, we examine the minimum period of confinement of six years in evaluating the reasonableness of the sentence. *See State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct. App.1989).

At sentencing, the district court had the benefit of a presentence investigation (PSI) report. The PSI report indicated that Byington was in complete denial of his inappropriate actions. The PSI report recommended that Byington "spend a period of time in the physical custody of the Idaho State Correctional Institution."

The district court also had a report from a licensed psychologist, who completed a mental evaluation of Byington. The underlying theme of the report was that Byington refused to accept responsibility for any wrongdoing and that he viewed himself as the victim in this case. In conclusion, the psychologist stated, in part:

[F]rom a clinical perspective the bottom line is that unless he is admitting that there is a problem in his behavior, effective treatment is precluded. Unfortunately, that appears to be the case in this matter, at least at this juncture.

The district court considered the four goals of sentencing when deciding Byington's case. Having thoroughly reviewed the record in this case, and having further considered the nature of the offenses and Byington's character, including his continual denial of guilt in this matter even though he had been found guilty by a jury, we conclude that the district court did not abuse its discretion in imposing Byington's sentences.

Byington also raises a proportionality argument by comparing the sentences he received with the sentences the defendant received in *State v. Hernandez*, 122 Idaho 227, 832 P.2d 1162 (Ct.App.1992). In *State v. Pederson*, 124 Idaho 179, 183, 857 P.2d 658, 662 (Ct.App.1993), this Court responded to the defendant's claim for comparative sentencing as follows:

In essence, [the defendant] invites us to engage in an exercise in comparative sentencing review. We decline this invitation. It is well settled that not every offense in like category calls for identical punishment; there may properly be a variation in sentences between different offenders, depending on the circumstances of the crime and the character of the defendant in his or her individual case. *State v. Seifart*, 100 Idaho 321, 597 P.2d 44 (1979); *State v. Smith*, 123 Idaho 290, 847 P.2d 265 (Ct. App.1993); *State v. Cambron*, 118 Idaho 624, 798 P.2d 469 (Ct.App.1990); *State v. Arnold*, 115 Idaho 736, 769 P.2d 613 (Ct.

App.1989); *State v. Puga,* 111 Idaho 874, 728 P.2d 398 (Ct.App.1986).

*Pederson,* 124 Idaho at 183, 857 P.2d at 662.

In light of *Pederson,* we decline Byington's invitation to conduct a comparative review of his sentences.

## III.

## CONCLUSION

We conclude that the district court did not err in denying Byington's suppression motion. We do not address Byington's challenge to the scope of the search warrant because it was not raised before the district court. We conclude that the district court did not err in denying Byington's motion in limine. We hold that the district court did not err in denying Byington's second continuance motion. We hold that Black's testimony was relevant and not unduly prejudicial. We conclude that there was sufficient evidence to support the jury's two findings of guilt. Finally, we hold that the district court did not abuse its discretion at sentencing. Thus, Byington's judgment of conviction and sentences are affirmed.

Chief Judge LANSING, CONCURS.

SCHWARTZMAN, J., dissenting.

I strongly dissent from parts II D. and E. of the majority opinion.

## LATE (MID–TRIAL) DISCLOSURE OF WITNESS AND BLACK'S TESTIMONY

It is true also of journeys in the law that the place you reach depends on the direction you are taking. And so, it makes all the difference in the world whether one approaches a defendant's basic right to fair notice and a reasonable opportunity to defend himself as a fundamental protection grounded in procedural due process, or one approaches it as little more than a formality, subject to the needs and vicissitudes of the state. I had thought that a criminal trial "by ambush" was a phenomenon of the past. Unfortunately, it has reared its head in this case to give the state its conviction, in the name of expediency, at the cost of reasonable fairness.

A little procedural history is in order. The indictment in this case was handed down on January 3, 1996; the trial was set for April 9. The defense filed its Motion To Compel Discovery on February 15. On the evening of the first day of trial, *after the jury had been seated and sworn and after opening statements,* the state notified counsel that a "new" witness by the name of Maia Black had been located. The state refused to disclose the nature of her testimony or her unlisted California phone number because the prosecutor did not want defense counsel to talk with her before he had a chance to interview her.[1] It was not until April 11, late in the afternoon on the third day of trial, that the defense got a chance to see Black and hear what her testimony was likely to be.[2]

The defense was given the weekend to prepare for what the state referred to as "the most compelling evidence in this case." The prosecutor further asserted, "The probative value, Your Honor, of this evidence is extremely, extremely important and extremely compelling. This is not, you know, some slight evidence that we're talking about here." Also, when defense counsel asked for a continuance beyond Monday, the prosecutor stated: "It would be an extreme hardship for Maia Black if the court were to continue her testimony any further. She had a very difficult time deciding to stay over the weekend, because she had just started a job, and you know, I was very—I mean if she hadn't of stayed, it really would have severely damaged the state's case."[3]

This *most compelling evidence* related to events occurring at least *eleven years earlier*

---

1. The name of Black had surfaced no later than March 20, 1996, when Byington's mother referred to her during a hearing on motions to suppress and in limine.

2. The defense was not given the opportunity to cross-examine Black during her offer of proof.

3. This is the same "state's case," I presume, that the prosecutor was fully prepared to take to trial just the week before without any knowledge of or reliance upon Black's testimony.

in a completely different context from the thrust of the state's indictment. Even assuming the marginal relevancy of such testimony, any practitioner of even marginal competency is now faced with the Herculean dilemma of trying to prepare, mid-trial and after strategic and tactical decisions have been made, to cope with this bolt out of the blue (or rather, from Oakland). I fully agree with the defense assertion that expecting it to meet this most compelling evidence in the case by working on it over the weekend does *fly in the face of reason. See and compare State v. Lamphere,* 130 Idaho 630, 945 P.2d 1 (1997). Put into the perspective of, at best, a weak and circumstantial state's case, the defense has literally been bushwhacked in the name of expediency. The state should not be rewarded for its lack of diligence and/or fortuitous good fortune to the utter detriment of defendant's right to due process.

The *Tapia* decision relied upon by the majority is notably distinguishable in several important respects. First, the newly disclosed witnesses testified to conversations relative to the underlying charges of conspiracy that occurred at or about the time of the incidents under indictment with one of the co-conspirators, not to completely unrelated events occurring eleven years earlier. These witnesses did not testify to additional sexual acts by the defendant; their testimony simply served to corroborate the existing testimony of the victim regarding her abuse. The Court made it a point to state that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice, which "is particularly true since the testimony did not describe any additional sexual acts by Tapia." Second, the court found that the testimony was particularly relevant because it was evidence of the defendant's scheme or plan to subject a *particular* eleven-year-old girl to sexual acts and because it showed the defendant's preparations to put this specific plan into action as well as his intent to gratify his sexual desire for *this* adolescent girl. Finally, the defense was given full access to the new witnesses and had the opportunity to conduct a thorough, recorded interview with them prior to their court testimony.

This is a far cry from the scenario facing the defense in our case. Black testified regarding the defendant's actions toward her which, at the time (11–14 years prior) she interpreted as horseplay, but which in hindsight she now interpreted as intentional and sexualized. Defense counsel argued that prejudice would result from the admission of Black's testimony for the following reasons: (1) opening statements had already been made and the defense had already disclosed the theory of the case to the jury (i.e.accident, horseplay); (2) defense counsel had spent its time, money and efforts preparing the case based upon this theory; (3) defense counsel did not have adequate time to meet this undisclosed evidence over a weekend; (4) defense counsel would be unable to find any corroboration of things defendant told her that would dispute or at least cast doubt upon Black's credibility/testimony as she had left Idaho seven years ago; and (5) defense counsel's expert was unable to be present to hear Black's testimony and offer defense counsel advice regarding possible credibility issues and points of cross-examination.

The Idaho Supreme Court has established that "late disclosure of evidence requires a reversal of conviction if the lateness of the disclosure impaired the defendant's constitutional right to receive a fair trial by affecting the defendant's ability to prepare and present his defense." *State v. Araiza,* 124 Idaho 82, 93, 856 P.2d 872, 883 (1993); *State v. Pizzuto,* 119 Idaho 742, 751, 810 P.2d 680, 689 (1991) ("[t]he test for reversible error is whether lateness of disclosure so prejudiced defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial."), *overruled on other grounds by State v. Card,* 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991); *State v. Olsen,* 103 Idaho 278, 283, 647 P.2d 734, 739 (1982) ("[w]here the question is one of late disclosure rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial."); *State v. Smoot,* 99 Idaho 855, 859, 590 P.2d 1001, 1005 (1978), *quoting United States v. Miller,* 529 F.2d 1125, 1128 (9th Cir.1976)

(the appropriate inquiry on appeal "is whether the lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.").

How can our system of justice reasonably expect competent defense counsel to meet Black's testimony, even assuming it should be admitted under I.R.E. 404(b), scrambling over a weekend while in the midst of trial under the circumstances described above? *Compare State v. Stradley*, 127 Idaho 203, 899 P.2d 416 (1995). The prosecutor's remarks quoted above offer compelling argument (*hoist on his own petard,* I would say) for why this mid-trial disclosure flies in the face of defendant's right to receive a fair trial and significantly impaired his right to prepare a defense.[4] Given the marginal nature of the state's case, the "late" disclosure, the, at best, marginally relevant nature of this testimony, its total remoteness to the time frame of the indictment, its lack of similarity to the context of abuse allegations alleged, and its prejudicial impact; the defense has made a most credible prima facie showing that the late disclosure, coupled with the failure to grant a meaningful continuance or mistrial, prejudicially impaired Byington's defense and that there is a reasonable probability that but for these rulings, the result of

the proceedings would have been different.[5] A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *See State v. Higgins*, 122 Idaho 590, 597–98, 836 P.2d 536, 543–544 (1992), *quoting United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

I am further constrained to the view that Black's testimony should not even have been admitted—certainly not on the state's case-in-chief—irrespective of the unfair surprise. Given the results of the motion in limine (Part C of the majority opinion), and the circumstances surrounding her testimony discussed above, I would hold that the prejudicial impact far outweighs any limited probative value it may have had. A loose relevance of alleged prior bad acts based upon unremarkable similarities of conduct remote in time is not sufficiently probative to justify its admission here, especially where the danger is so great that its emotional impact will serve mainly as a prosecutorial vehicle for showing defendant's character propensity is such that he acted in conformity therewith.

Accordingly, I respectfully DISSENT and would overturn this conviction and remand for a new trial.

---

4. Had Black been disclosed just prior to picking the jury, it would have been incumbent upon the trial judge to grant a reasonable continuance; after all, the case was barely three months old and the defendant was not in custody. It should make no difference that the disclosure came after jeopardy had attached. Indeed, the circumstances are even more compelling here! *To condone the state's request under these circumstances is to render Criminal Rule 16 a nullity and send out a clear message that it may be circumvented, with impunity, by the state.*

5. I query the *Tapia* Court's adoption of a standard that to prove prejudice, "a defendant must show there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different." 127 Idaho 249, 255, 899 P.2d 959, 965 (1995). *Tapia* engrafted this prejudice standard from our Court's decision in *State v. Spradlin*, 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct.App.1991), which in turn engrafted the definition of prejudice from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Parrott v. State*, 117 Idaho 272, 274–75, 787 P.2d

258, 260–61 (1990). The purpose of the prejudice standard as set forth in *Strickland* and *Parrott* is to determine whether, absent counsel's ineffectiveness, the result of the proceeding would have been different. This reliance on the standard a defendant must meet in order to demonstrate constitutionally ineffective assistance of counsel seems inapposite to the issue of whether the state's failure to timely disclose *significant inculpatory evidence* deprived the defendant of a fair trial. Perhaps a more appropriate method of analyzing this type of violation would be to require the offending party to demonstrate that the violation did not prejudice the non-offending party (*see, e.g., State v. Knight*, 734 P.2d 913 (Utah 1987) (When the defendant can make a credible argument that the prosecutor's failure to disclose has impaired the defense, it is up to the State to persuade the court that there is no reasonable likelihood that absent the error, the outcome of trial would have been more favorable for the defendant.)), i.e., something more akin to a harmless error standard.